THE PUBLIC SERVICE COMMISSION OF NEVADA, Appellant and Cross-Respondent, *v.* CONTINENTAL TELEPHONE COMPANY OF CALIFORNIA, dba CONTINENTAL TELEPHONE COMPANY OF NEVADA, Respondent and Cross-Appellant.

No. 9011

June 21, 1978                                    580 P.2d 467

---

*Robert List,* Attorney General, *E. Williams Hanmer,* Deputy Attorney General, Carson City, for Appellant and Cross-Respondent.

*Laub, Clark & Hall, Ltd.,* Reno, for Respondent and Cross-Appellant.

## OPINION

*Per Curiam:*

In 1974, Continental Telephone applied to the Public Service Commission for rate increases on Nevada service amounting to $1,509,715. The P.S.C. held extensive hearings throughout the state, and on June 6, 1975 issued orders which only allowed $233,966 of the requested increases. Continental thereupon sought judicial review of the P.S.C. orders on six items of accounting. After oral argument, the district court overruled the P.S.C. on four items, but upheld the commission's findings on the remaining two issues. Specifically, the court found the commission arbitrarily and capriciously disallowed the following: (1) Continental's adjustments which increased test year operating revenues by $532,461 due to alleged decreases in toll revenues; (2) depreciation rate changes in four accounts; and (3) deductions of working capital from Continental's rate base. The district court also concluded (4) the commission improperly deducted increased depreciation from the rate base. However, the court affirmed rulings which (5) disallowed reapportionment of negative depreciation reserve, and (6) permitted a rate of return on common equity at 12.8% instead of the requested 14 1/2%. The P.S.C. appeals from that portion of the district court's decision which found their actions arbitrary and capricious, and Continental cross-appeals from the orders which upheld the remaining commission action.

The parties concede that appellate review of administrative decisions is governed by the following standards:

(1) The district court and supreme court should not interfere with the commission's rulings or review its determinations, further than to keep it within the law and protect constitutional rights of the public service agencies over which control is exercised. *See* No. Las Vegas v. Pub. Serv. Comm'n, 83 Nev. 278, 429 P.2d 66 (1967).

(2) The court should not pass upon the credibility of witnesses or reweigh the evidence, but limit its review to a determination that the commission's decision is based on substantial evidence. *See No. Las Vegas,* cited above; Garson v. Steamboat Canal Co., 43 Nev. 298, 185 P. 801 (1919).

(3) Rates must not be confiscatory, and provide a just and reasonable return. But, this court will not quarrel with the methods used in arriving at rate determinations so long as the end result permits a just and reasonable return. *See* Nevada Power Co. v. Public Serv. Comm'n, 91 Nev. 816, 544 P.2d 428 (1975); Public Serv. Comm'n v. Ely L. & P., 80 Nev. 312, 393 P.2d 305 (1964); Bell Tel. Co. v. Pub. Ser. Comm., 70 Nev. 25, 253 P.2d 602 (1953); *see also* Intermountain Gas Co. v. Idaho Public Utilites Com'n, 540 P.2d 775 (Idaho 1975).

(4) The commission is not bound to accept as true unrebutted expert evidence if such evidence lacks credibility. *See* State v. Public Service Commission, 220 S.W.2d 61 (Mo. 1949); New Haven Water Co. v. Connecticut Public Utilities Comm'n., 305 A.2d 863 (Conn. 1972).

With these standards in mind, we turn then to each accounting issue to see if there was substantial evidence to support the Public Service Commission's orders.

1. *Toll revenue adjustments disallowed by the P.S.C.* Toll Revenues are generated from a pool of funds by the various companies within the phone system for long-distance service. In other words, phone companies get part of their revenue from rates charged for local service (exchange), and the remaining portion from the pool of funds paid by customers for toll calls. The amount of money drawn from the pool depends on the long-distance use by Continental's customers. Continental did a survey of their customers during the "test year" 1973, and allegedly found a decrease in toll use. Thus, Continental insisted $532,461 in revenue would be lost in 1974 unless local exchange rates were increased.

The P.S.C. disallowed the toll readjustment, citing as its most important reasons the speculative nature of the study, Continental's failure to provide definitive figures on the toll settlement percentage, and the use of end-of-period rate base in determining the toll settlement percentage factor for its various accounts. The district court found the disallowance arbitrary and capricious solely because the P.S.C. failed to recognize the end-of-period rate base. (The P.S.C. insisted on a quarterly breakdown.)

Arguably, some of the commission's justifications were improper. However, the findings were based on many factors, including the numerous inconsistencies within the Continental report. We therefore believe the P.S.C. properly disallowed the readjustment, and its order should be upheld. The district court improperly substituted its judgment for that of the commission.

2. *Disallowance of depreciation rate changes in four of thirteen accounts.* Continental attempted to increase depreciation rates in nine accounts, and decrease such rates in four accounts. In support of their depreciation adjustments, they presented the testimony of Mr. Davis, an expert in depreciation. The commission allowed depreciation increases in five of nine accounts and all four decreases, but they disallowed increases in accounts 212, buildings; 221, central office equipment; 242.2, cable; and 244, conduit. The stated reasons are supported by the record. First, Mr. Davis testified that three methods were available to simulate the life of an account: the Brennan, Baughan, and Garland methods. He further testified that different methods were used on different accounts, and the method used could vary the useful life by as much as two years. Finally, Davis used a rounding-off method which interjected more independent judgment into the process.

The district court found the allowance of increases and decreases in five accounts, and the disallowance in the remaining four, arbitrary. Such decision is again an unjustified substitution of judgment. The record reveals the four accounts in question represented substantial portions of the company's assets (over 44%). Extensive cross-examination revealed how damaging the flaws in Davis' judgment would be on the final accounting with respect to these accounts. Therefore, the original P.S.C. order is affirmed.

3. *Disallowance of working capital deductions from rate base.* Here, the issue involves whether tax accruals must be

deducted from working capital. In other words, must the company use its available saved tax revenues as working capital. This issue was answered affirmatively in Public Serv. Comm'n v. Ely L. & P., 80 Nev. 312, 393 P.2d 305 (1964), where we held tax accruals must be used as working capital so long as the commission demonstrates their availability. Here, the P.S.C. failed to make such a showing when challenged, and the district court's order overruling the disallowance is affirmed.

4. *Deduction of increased depreciation from rate base.* NRS 233B.125 requires administrative agencies to make written findings of fact and conclusions of law to support particular findings. Since no explanation was offered with regard to the deduction of increased depreciation from rate base, the commission's order should be presumed unreasonable. The district court's order overruling the P.S.C. is affirmed.

5. *Negative depreciation reserve.* Here, Continental attempted to reallocate depreciation reserves for equipment already retired, long before the deduction was scheduled to be taken. By moving future deductions forward into the test year, Continental may have created a false picture with regard to their expense structure. Testimony revealed there were other methods to alleviate incorrect depreciation estimates. Therefore, the orders of the P.S.C. and district court are affirmed.

6. *Rate of return on common equity at 12.8%.* Continental's expert, Dr. Stitch, considered 14 1/2% to be the proper rate of return on common equity. Intervenor's expert, Mr. Loconto, felt 12.8% was a more suitable rate of return. The commission accepted Mr. Loconto's figure. In Nevada Power Co. v. Public Service Comm'n, 91 Nev. 816, 544 P.2d 428 (1975), this court held the methods used to determine rate of return are outside the scope of judicial inquiry. The commission's expertise in selecting between the methods used by the two opposing experts should therefore be given deference by this court. Since the rate of return at 12.8% was supported by substantial evidence, we affirm the district court's order.

Affirmed in part; reversed in part.[1]

---

[1]MR. JUSTICE GORDON THOMPSON voluntarily disqualified himself and took no part in this decision. The Governor, pursuant to Art. 6, § 4 of the Constitution, designated Judge Merlyn Hoyt of the Seventh Judicial District, to sit in his stead.