SILVER LAKE WATER DISTRIBUTION COMPANY, APPELLANT, *v.* THE PUBLIC SERVICE COMMISSION OF NEVADA, RESPONDENT.

No. 21781

December 20, 1991                    823 P.2d 266

*Allison, MacKenzie, Hartman, Soumbeniotis & Russell,* Carson City, for Appellant.

*Leslie T. Miller,* General Counsel, Carson City, for Respondent.

## OPINION

*Per Curiam:*

### THE FACTS

Mr. William Lear ("Mr. Lear") and the City of Reno ("the City") began discussions regarding the future development of the Reno-Stead area in 1966. The City deeded the first piece of property to Mr. Lear in 1968. The Reno-Stead Development Company ("Reno-Stead") was established by Mr. Lear to manage the engineering and master planning of the Reno-Stead property.

Pursuant to its agreement with the City, Reno-Stead began developing the water rights associated with the land. Reno-Stead filed three applications with the State Engineer on December 2, 1968. Sometime during 1971-1972, Reno-Stead was transformed into the Leareno Development Company ("Leareno"), although the Reno-Stead name was later used by Mr. Lear. On June 26, 1974, Mr. Lear, under the name of Reno-Stead, entered into an agreement with Robert L. Helms Construction and Development Company ("Helms") to assign temporarily its water rights, which Helms utilized to construct a public highway. Leareno's primary objective of this temporary assignment was to demonstrate some proof of beneficial use to pave the way for Mr. Lear's perfection of the water rights.[1] The water rights were eventually perfected and certificates issued by the State Engineer on August 15, 1975.

Silver Lake Water Distribution ("Silver Lake") was incorporated by Mr. Lear on March 1, 1978. Mr Lear died on May 14,

---

[1]The Commission summarized the steps necessary for perfecting water rights in Nevada as follows:

> Simply stated, the filing of an application for water rights with the State Engineer is the first step . . . . If the application is approved, a permit is issued to the applicant. A permit to appropriate water grants the right to develop a certain amount of water for a particular purpose. In order to perfect the water rights, an applicant must file proof of beneficial use with the State Engineer. Once proof has been filed, the State Engineer will issue a certificate in place of the permit.

1978. Silver Lake provided water to its first customer in June of 1978 and became a public utility subject to the regulatory authority of the Public Service Commission of Nevada ("the Commission") in January, 1980. Silver Lake did not have formal ownership of the water rights until February of 1980, when Leareno transferred the rights to it by quitclaim deed. In August of 1980, Silver Lake recorded the figure of $732,000.00 in its financial records to represent the value of its water rights.

The Commission conducted an investigation into the rates charged by Silver Lake in 1986, after which it ordered Silver Lake to appear and provide justification for its rates and practices. Hearings before the Commission began in April 14, 1987. The Commission subsequently determined that Silver Lake had an inflated *rate base*.[2] The Commission's conclusion rested on the appropriate valuation of Silver Lake's water rights. Silver Lake claimed that its water rights were worth $1,000.00 per acre foot for a total of $732,000.00. No reliable documentation was ever produced by Silver Lake in support of its claim, although Silver Lake was given a two month continuance for that purpose. Consequently, based on the "original cost" method of valuation, the Commission found that only $75.00 could be included in Silver Lake's rate base as the cost of developing its water rights. This conclusion rested on the Commission's determination that the only credible evidence of Silver Lake's costs were the three applications filed in 1968 at $25.00 each.

The district court upheld the Commission's decision to use the "original cost" method of valuation and determined that the Commission acted appropriately. We agree.

## DISCUSSION

The standard of judicial review for orders issued by the Commission is set forth in NRS 703.373(6).[3] Nevada courts have

---

[2]The Commission explained the importance of the "rate base" for a utility as follows:

> By placing an item into the rate base, a public utility is given the opportunity to earn a return on their investment. The investment by the utility is the amount of money spent by the company to acquire the item. The utility company is compensated for those expenses through the rates charged for utility service. Since it is the consumer who is ultimately liable for the value of the item placed into rate base, an accurate value for the item must be determined.

[3]703.373 Judicial review: Petition; answer; scope of review; grounds for setting aside decision of commission.

. . .

6. The court shall not substitute its judgment for that of the commission as to the weight of the evidence on questions of fact. The

traditionally upheld decisions by the Commission "if there is substantial evidence in the record to support its findings." PSC v. Continental Tel. Co., 94 Nev. 345, 348, 580 P.2d 467, 468-469 (1978). We will not interfere with decisions by the Commission except when necessary "to keep them within the framework of the law." Nevada Power v. Public Service Commission, 105 Nev. 543, 545, 779 P.2d 531, 532 (1989).

### 1. *Date of Dedication.*

Silver Lake insists that Mr. Lear's intent to dedicate the water rights to public use was not clear until 1978, when Silver Lake served its first customer. Therefore, Silver Lake argues that its water rights should be "valued" according to its cost of reproduction or replacement as of 1978. Conversely, the Commission maintains that Mr. Lear's intent to dedicate to public use was clear in 1968, based on testimony and evidence demonstrating that a master plan had been developed for the Silver Lake area in 1968.

The applications filed with the State Engineer in 1968 stated that Mr. Lear's intended use of the water was "quasi-municipal." No evidence indicates that the water rights were ever intended for anything other that public use from the outset. We hold that the Commission had substantial evidence to find that the water rights were dedicated to public use in 1968. In so doing, however, we do not mean to infer that a utility is precluded from including verifiable expenditures after the date of filing applications. Here, however, Silver Lake failed to submit any costs beyond 1968. Consequently, the date of dedication is irrelevant for all practical purposes under these unusual circumstances.

### 2. *"Original Cost" Valuation.*

The Commission has broad discretion in ascertaining the value of public utility assets and is not required to use any particular

---

court may affirm the decision of the commission or set it aside in whole or in part if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(a) In violation of constitutional or statutory provisions;
(b) In excess of the statutory authority of the commission;
(c) Made upon unlawful procedure;
(d) Affected by other error of law;
(e) Clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or
(f) Arbitrary or capricious or characterized by abuse of discretion.

kind of valuation method. *See* NRS 704.440.[4] The Commission's use of an original cost method of valuation received approval from this court in Public Serv. Comm'n v. Ely L. & P., 80 Nev. 312, 321-22, 393 P.2d 305, 309-310 (1964). Silver Lake contends that *Ely L. & P.* stands for the proposition that the Commission could utilize "reproduction costs" (replacement cost) as a means of valuating assets in the rate base. Certainly, the Commission has the discretion to do so. However, in *Ely L. & P.,* we overruled the trial court's attempt to force the Commission to utilize a reproduction cost method. *Ely L. & P.,* 80 Nev. at 322, 393 P.2d at 310. Therefore, any decision by this court directing the Commission to use one acceptable method of valuation over another would amount to the substitution of our judgment over the Commission's in violation of NRS 703.373(6).

"Original cost" represents a utility's investment in developing an asset, such as water rights. The burden of proving the costs associated with the investment falls on the shoulders of the utility, because the costs necessitate an increase in customer rates.[5] "Original cost" and "value" may be synonymous under circumstances where a utility's costs is what it actually paid for the asset in an arm's-length transaction. For example, had Silver Lake purchased the water rights through an arm's-length transaction for $732,000.00, then its "original cost" would be $732,000.00. Here, however, the water rights were under Mr. Lear's control from the beginning.

The record reveals that as of May, 1980, Silver Lake had inadequate documentation as to Mr. Lear's actual investment into developing the water rights. Consequently, Silver Lake accepted an unsupported appraisal, in the form of a letter, dated July 30, 1980, sent by attorney Ross E. deLipkau, estimating a value of $1,000.00 an acre foot for the rights. This figure was placed on the books of Silver Lake in August of 1980. In 1985, the Lear

---

[4]704.440   Investigation and ascertainment of value of property of public utility.

   1.   The commission may, in its discretion, investigate and ascertain the value of all property of every public utility actually used and useful for the convenience of the public.

   2.   In making such investigation the commission may avail itself of all information contained in the assessment rolls of the various counties and the public records and files of all state departments, offices and commissions, and any other information obtainable.

[5]The United States Supreme Court endorses a reasonableness test, which allows for valuation based on historical or actual legitimate costs. Duquesne Light Co. v. Barasch, 488 U.S. 299, 310 (1989); Bell Tel. Co. v. Pub. Ser. Comm., 70 Nev. 25, 30-31, 253 P.2d 602, 604 (1953); Federal Power Comm'n v. Hope Natural Gas Co., 320 U.S. 591, 602 (1944).

estate began negotiations with the IRS to determine the estate's value for tax purposes, relying on the $732,000.00 figure as the value for the Silver Lake water rights. The record reflects that the Internal Revenue Service stipulated to Silver Lake's stated value for the water rights solely in an effort to establish a "bottom line" figure for the Lear estate and did not perform a separate valuation. When Silver Lake appeared before the Commission, its own expert admitted that the $732,000.00 figure was an "estimate," founded on Mr. deLipkau's letter and the Internal Revenue Service stipulation with the Lear estate. We agree with the Commission's conclusion that: "A chain is only as strong as its weakest link. The 'chain' developed by Silver Lake to establish a value of $1,000.00 an acre foot must break because the initial link is flawed." Clearly, accepting Silver Lake's figure of $732,000.00 based entirely on Mr. deLipkau's letter would open the door to abuse.

The Commission is obligated to make its determinations based on actual data; it may not rely on mere assumptions. Public Serv. Comm'n v. Ely L. & P., 80 Nev. 312, 329, 393 P.2d 305, 314 (1964). In the applications to the State Engineer, Mr. Lear estimated that the costs of developing the water rights would exceed $50,000.00. We do not doubt that Mr. Lear invested more than $75.00 to develop the Silver Lake water rights. Costs of drilling wells, engaging engineers, legal expenses, etc., are all expenditures which may be included in an "original cost" valuation. However, those costs must be proven.

The Commission was given no means by which to determine the costs of Silver Lake's water rights at anything other than $732.000.00. In essence, Silver Lake has gambled on its $732,000.00 figure, wagering that this court would find the $75.00 award unconscionable and send this case back to the Commission. However, by remanding this case, we would be endorsing a gambling mentality where—if the gamble fails—a utility company could then return to the Commission and provide responsible evidence. This we will not do. Silver Lake has had sufficient opportunity to demonstrate its costs in developing the water rights. Silver Lake's "all or nothing" proposition has left the Commission, the district court and this court with no choice but to conclude that the "original cost" of its water rights is $75.00.

The result of the Commission's decision was to make a downward adjustment of $731,925.00 in Silver Lake's capital structure. Silver Lake will still receive a 14.337 percent rate of return on its revised capital structure. Consequently, we conclude that

Silver Lake is receiving a reasonable return. *See* Bell Tel. Co. v. Pub. Ser. Comm., 70 Nev. 25, 30-31, 253 P.2d 602, 604 (1953).

Accordingly, we conclude that there was no error below and affirm the decision of the district court to uphold the Commission's opinion.