OPINION
 

 By the Court,
 

 Parraguirre, J.:
 

 In this appeal, we address whether an entity can lose its vested rights to utilize certain water flow — rights that it acquired before the adoption of Nevada’s statutory water law scheme — when a permit modifying those rights is canceled and later reinstated pursuant to NRS 533.395. For the reasons set forth below, we conclude that the cancellation and later reinstatement of a permit modifying an entity’s prestatutory vested water rights cannot result in the entity losing its priority to use that water flow because Nevada law prevents such rights from impairment by statute. In reaching this conclusion, however, we reiterate that prestatutory vested water rights are subject to state regulation, and the holders of such rights must comply with state permit requirements when seeking to modify the use of their vested rights.
 

 
 *185
 

 FACTS AND PROCEDURAL HISTORY
 

 This case involves a dispute about water that flows in Ash Canyon Creek in Carson City. The district court first apportioned Ash Canyon Creek water rights as part of an 1885 decree. At that time, the court expressly made most rights equal in priority. Both appellant Andersen Family Associates (AFA) and respondent Carson City own rights under the decree to portions of the Ash Canyon Creek water flow as successors in interest to the original owners.
 

 In 2000, Carson City sent a letter to the State Engineer inquiring about the different ownership interests in Ash Canyon Creek. The State Engineer responded that AFA owned 29.872 percent of the creek’s flow. The State Engineer also noted, however, that 6.2757 percent of AFA’s interest belonged specifically to the Donald A. Andersen Trust. In addition, the Engineer observed that Carson City’s interest in the creek’s flow was 60.608 percent.
 

 Following Carson City’s inquiry and the State Engineer’s response, the Donald A. Andersen Trust sold its interest in the waters of Ash Canyon Creek to the City. Shortly before this transaction was completed, the State Engineer granted an application by Carson City for a permit to change the manner and location of its use of a portion of the creek’s waters for municipal purposes. As a condition of the permit, Carson City was required to file proof of completion of the approved work by June 23, 2004.
 

 When Carson City failed to file the required proof of completion, the State Engineer notified the City that the permit was subject to cancellation. Because Carson City still did not satisfy its completion requirement, the State Engineer eventually canceled the City’s permit.
 

 On August 31, 2004, Carson City petitioned the State Engineer to rescind the cancellation of the City’s permit. Following a hearing on Carson City’s petition, the State Engineer allowed the City to submit a request for an extension to file the necessary documents. Carson City then applied for an extension, which the Engineer granted, extending the City’s proof of completion deadline for one year from the original date. Thereafter, Carson City filed its proof of work completion within the extended deadline.
 

 After the reinstatement of Carson City’s permit, AFA sent a letter to the State Engineer asserting that, under NRS 533.395(3), the permit’s cancellation resulted in a loss of priority for the rights that Carson City purchased from the Donald A. Andersen Trust. The State Engineer replied that, because the rights at issue were part of an 1885 court decree and NRS 533.085(1) specifically provides that Nevada’s water law statutes cannot impair rights that vested
 
 *186
 
 before the state’s statutory scheme was enacted, the priority of the rights in question had not been lost.
 
 [1]
 

 AFA petitioned the district court for judicial review of the State Engineer’s decision. The district court denied AFA’s petition, noting that in light of NRS 533.085(l)’s nonimpairment provision, the priority of the water rights at issue in this case did not change.
 
 [2]
 
 This appeal followed.
 

 DISCUSSION
 

 The sole issue on appeal is whether Carson City lost priority on certain vested water rights after the State Engineer canceled and later reinstated a permit modifying the use of those rights pursuant to NRS 533.395.
 

 Standard of review
 

 In the context of an appeal from a district court order denying a petition for judicial review of a decision made by the State Engineer, this court has the authority to undertake an independent review of the State Engineer’s statutory construction, without deference to the State Engineer’s determination.
 
 [3]
 
 Still, because the appropriation of water in Nevada is governed by statute, and the State Engineer is authorized to regulate water appropriations, that office has the implied power to construe the state’s water law provisions and great deference should be given to the State Engineer’s interpretation when it is within the language of those provisions.
 
 [4]
 
 Nonetheless, the State Engineer’s “ ‘interpretation of a regulation or statute does not control if an alternative reading is compelled by the plain language of the provision.’ ’ ’
 
 [5]
 

 Conflict between NRS 533.085(1) and NRS 533.395(3)
 

 On appeal, AFA argues that, under the plain language of NRS 533.395(3), Carson City lost priority with respect to the water
 
 *187
 
 rights at issue because the State Engineer canceled and reinstated the City’s permit modifying the place and manner of the City’s use of those rights. In the proceedings underlying this appeal, however, both the State Engineer and the district court concluded that NRS 533.395(3) did not alter the priority of the water rights at issue because Carson City’s water rights vested before NRS Chapter 533’s provisions were enacted.
 

 NRS 533.395(3) provides,
 

 If [a] decision of the State Engineer modifies or rescinds the cancellation of a permit [that changed the manner or place of use of water already appropriated], the effective date of the appropriation under the permit is vacated and replaced by the date of the filing of the written petition [to rescind the cancellation] with the State Engineer.
 

 By contrast, NRS 533.085(1), Nevada’s nonimpairment statute, states that
 

 Nothing contained in [Chapter 533] shall impair the vested right of any person to the use of water, nor shall the right of any person to take and use water be impaired or affected by any of the provisions of this chapter where appropriations have been initiated in accordance with law prior to March 22, 1913.
 
 [6]
 

 Thus, we are faced with two unambiguous statutes that are in conflict: while NRS 533.085(1) specifically exempts prestatutory water rights from impairment by Nevada’s statutory water law, NRS 533.395(3) more generally provides for a loss of priority when any water permit (regardless of the underlying right) is canceled and reinstated.
 

 In the past, this court has recognized that, when statutory language is clear and unambiguous, the court will not look beyond its plain meaning and will “give effect to its apparent intent from the words used, unless that meaning was clearly not intended.”
 
 [7]
 
 In addition, rules of statutory construction require that “multiple legislative provisions be construed as a whole, and where possible, a statute should be read to give plain meaning to all its parts.”
 
 [8]
 
 Thus, when a specific statute is in conflict with a general one, the specific statute will take precedence.
 
 [9]
 
 Still, no statutory language
 
 *188
 
 should be rendered mere surplusage if such a consequence can properly be avoided.
 
 [10]
 

 In this case, the State Engineer contends that NRS 533.085(1) prohibits him from applying NRS 533.395(3) to Carson City’s vested water rights because a loss of priority would “impair” or “affect” those rights.
 
 [11]
 
 On the other hand, AFA argues that once Carson City sought a permit modifying its vested rights, those rights became subject to NRS 533.395(3)’s plain language, which mandates a loss of priority upon the reinstatement of a canceled permit. For the reasons that follow, we deem AFA’s argument unpersuasive.
 

 Types of water rights in Nevada
 

 Generally, “[t]he term ‘water right’ means ... the right to divert water by artificial means for beneficial use from a natural spring or stream.”
 
 [12]
 
 In Nevada, there are three different types of water rights: vested, permitted, and certificated. First, “vested” rights are those that existed under Nevada’s common law before the provisions currently codified in NRS Chapter 533 were enacted in 1913.
 
 [13]
 
 These rights may not be impaired by statutory law and may be used as granted in the original decree until modified by a later permit.
 
 [14]
 
 Second, “permitted” rights refer to rights granted after the State Engineer approves a party’s “application for water
 
 *189
 
 rights.”
 
 [15]
 
 Such permits grant the right to develop specific amounts of water for a designated purpose.
 
 [16]
 
 Third, “certificated” rights are statutory rights granted after a party perfects his or her permitted water rights.
 
 [17]
 
 In order to perfect permitted water rights, “an applicant must file proof of beneficial use with the State Engineer. Once proof has been filed, the State Engineer will issue a certificate in place of the permit.”
 
 [18]
 

 Effect of applying for a permit to modify the use of vested rights
 

 As noted above, AFA contends that vested rights can be “lost” by applying for and receiving a permit modifying the use of those rights. As this court has recognized, however, “rights acquired before 1913 [can] only be lost in accordance with the law in existence at the time of the enactment of [Nevada’s statutory water rights provisions], namely, intentional abandonment.”
 
 [19]
 
 Because nothing in NRS Chapter 533 or our previous cases suggests that an application to modify vested rights amounts to “intentional abandonment” of those rights, AFA’s argument fails.
 
 [20]
 
 In this case, therefore, the cancellation of Carson City’s permit (and later reinstatement of that permit) did not affect the City’s underlying vested rights. Although Carson City lost the right to use the water at issue in the approved manner under the permit when the permit was canceled, the City did not lose the priority attached to its vested rights because such a result would “impair” the City’s vested rights in violation of NRS 533.085(1).
 

 Our conclusion in this case comports with two previous opinions discussing vested water rights in Nevada. First, in
 
 Ormsby County
 
 
 *190
 
 v.
 
 Kearney,
 

 [21]
 

 we considered the extent to which Nevada courts could determine whether an appropriator with vested rights has violated the water rights of another party. There, we concluded that such a determination would not amount to “an unlawful interference with the vested rights of water appropriators.”
 
 [22]
 
 In reaching this conclusion, we dismissed the notion that the provisions of NRS 533.085(1) prevented any of the other sections of Nevada’s water law act from applying to water rights acquired before the act was adopted because “[t]he whole scope and purpose of the act show that it was intended to apply to all water rights, whether acquired before or after its adoption. There would be little or no use in attempting state control over a stream or stream system unless all water rights were brought under that control.”
 
 [23]
 
 Still, we further recognized that vested rights were not subject to impairment by statute:
 

 The greater portion of the water rights upon the streams of the state were acquired before any statute was passed prescribing a method of appropriation. Such rights have uniformly been recognized by the courts as being vested under the common law of the state.
 
 Nothing in the act shall be deemed, to impair these vested rights; that is, they shall not be diminished in quantity or value.
 
 As they are all prior in time to water rights secured in accordance with later statutory provisions, such priorities must be recognized.
 
 [24]
 

 In this sense, although
 
 Ormsby
 
 makes clear that vested water rights are subject to regulation under Nevada’s statutory system, such regulation may not impair the quantity or value of those rights. Here, a loss of priority, which would render Carson City’s rights useless in some years, certainly affects the rights’ value;
 
 [25]
 
 thus, the loss of priority provision in question cannot apply.
 

 Second, in
 
 In Re Waters of Manse Spring,
 
 we addressed whether NRS 533.085(1) prevented the application of a statute providing for the forfeiture of water rights after a five-year period of continuous nonuse.
 
 [26]
 
 We concluded that the forfeiture statute did not apply and expressly adopted the district court’s reasoning that ‘ ‘to apply the terms of [the forfeiture provision] would have the effect of impair
 
 *191
 
 ing rights to the waters of Manse springs which had vested prior to the enactment of the 1913 statute, and therefore said section should be excluded.”
 
 [27]
 
 Moreover, we recognized that in light of NRS 533.085(1), “rights acquired before 1913 [can] only be lost in accordance with the law in existence at the time of the enactment of said 1913 statute, namely, intentional abandonment.”
 
 [28]
 
 Although this case only involves a potential loss of priority (as opposed to the forfeiture of rights), we note that a loss of priority can amount to a de facto loss of rights depending on water flow. In this manner, the loss of priority provision at issue here poses a similar problem as the forfeiture statute at issue in
 
 Manse Spring,
 
 and we conclude that the reasoning from
 
 Manse Spring
 
 is equally applicable here.
 

 By contrast, AFA cites our decision in
 
 Desert Irrigation, Ltd.
 
 v.
 
 State of Nevada
 
 for support of the argument that Carson City’s rights are subject to a loss of priority.
 
 [29]
 
 In
 
 Desert Irrigation,
 
 the appellant received a permit to change its use of certain
 
 certificated
 
 rights.
 
 [30]
 
 When the appellant failed to comply with the terms of the permit, however, the State Engineer canceled the permit pursuant to NRS 533.395(1).
 
 [31]
 
 The State Engineer then concluded that the appellant’s certificated rights reverted to the public
 
 (i.e.,
 
 the appellant lost both its permitted and certificated rights).
 
 [32]
 
 On appeal, the appellant contended that because its water rights were certificated, any portion of its rights that were canceled under the permit should have reverted back to it.
 
 [33]
 
 We disagreed, however, concluding that “[b]ecause the language of NRS 533.395(1) does not distinguish between original permittees and those permittees with prior certificated rights, all permittees are subject to the same requirements.”
 
 [34]
 
 Furthermore, we recognized that “[t]he plain language of NRS 533.040 ‘severs’ all existing water rights under a
 
 *192
 
 prior certificated use. Thus, a former certificated holder must begin the water certification process anew.”
 
 [35]
 
 As a result, “permitted water rights, cancelled pursuant to NRS 533.395, revert to the public domain and are available for further appropriation.’ ’
 
 [36]
 

 AFA argues that the reasoning from
 
 Desert Irrigation
 
 applies with equal force to this case. According to AFA, because the language of NRS 533.395(3) does not distinguish between original permittees and those permittees with prestatutory vested rights, all permittees, including those with prestatutory vested rights, are subject to the same requirements. Unlike the certificated rights at issue in
 
 Desert
 
 Irrigation, however, prestatutory vested rights are protected from impairment by the plain language of NRS 533.085(1). Thus,
 
 Desert Irrigation
 
 did not address the issue currently before us. Moreover, the present case involves the reinstatement of a permit and NRS 533.395(3)’s loss of priority provision — not cancellation under NRS 533.395(1). Thus, the concern of whether the water reverts to the holder or to the public is not a factor, and the reasoning in
 
 Desert Irrigation
 
 does not apply.
 
 [37]
 

 Despite AFA’s arguments to the contrary, we further conclude that Carson City’s decision to apply for a permit, which was granted, did not subject the City’s water rights to NRS 533.395(3). Although Carson City changed the
 
 use
 
 of its vested rights, those rights remained of the same
 
 character
 
 — i.e., they remained vested and did not become solely “permitted rights” just because the holder obtained a permit changing the use of the rights.
 

 Still, as we explained in
 
 Ormsby,
 
 prestatutory vested rights are subject to state regulation.
 
 [38]
 
 Thus, Carson City must obtain the proper permits and documentation to modify the use of its vested
 
 *193
 
 rights, and the State Engineer has the authority to cancel those permits under NRS Chapter 533. In such instances, NRS 533.085(1) is not implicated because the cancellation of a water rights permit does not “impair” the underlying vested rights. In other words, although the state could never cancel Carson City’s prestatutory vested rights (absent a finding of intentional abandonment), the state can and has required the City to comply with permitting and certificating requirements or risk losing the permits and certificates that define and modify its existing vested rights. Therefore, had the City failed to obtain reinstatement of its permit by the State Engineer in this case, the City would not have been able to use the rights in the modified manner approved by that permit.
 

 CONCLUSION
 

 We conclude that Carson City’s prestatutory vested water rights are not subject to a loss of priority under NRS 533.395(3). We reiterate, however, that such rights are subject to state regulation, and rights holders must comply with all state permit requirements. Indeed, the failure to comply with state permit requirements may render valuable permitted rights useless in certain circumstances. Because Carson City’s permit was properly reinstated in this case, however, we affirm the judgment of the district court denying AFA’s petition for judicial review.
 

 Gibbons, C. J., Maupin, Hardesty, Douglas, Cherry and Saitta, JJ., concur.
 

 [1]
 

 More specifically, the State Engineer suggested that “only the decree court can [make] the decision as to whether a decreed right can lose its priority when this decreed right is changed under the provisions of NRS 533 and cancelled.”
 

 [2]
 

 See
 
 NRS 533.395(3); NRS 533.085(1);
 
 In Re Waters of Manse Spring,
 
 60 Nev. 280, 108 P.2d 311 (1940);
 
 Ormsby County v. Kearney,
 
 37 Nev. 314, 352, 142 P. 803, 810 (1914).
 

 [3]
 

 Bacher v. State Engineer,
 
 122 Nev. 1110, 1117, 146 P.3d 793, 798 (2006). “Statutory construction is a question of law, which this court reviews de novo.”
 
 Kay v. Nunez,
 
 122 Nev. 1100, 1104, 146 P.3d 801, 804 (2006).
 

 [4]
 

 United States v. State Engineer,
 
 117 Nev. 585, 589, 27 P.3d 51, 53 (2001).
 

 [5]
 

 Id.
 
 at 589-90, 27 P.3d at 53 (quoting
 
 Southern Cal. Edison
 
 v.
 
 PUC,
 
 102 Cal. Rptr. 2d 684, 698 (Ct. App. 2000)).
 

 [6]
 

 The Legislature enacted NRS 533.085(1) to avoid any unconstitutional impingements on water rights that were in existence at the time Nevada’s statutory water law went into effect.
 
 Manse Spring,
 
 60 Nev. at 288-89, 108 P.2d at 315. The parties do not dispute that Carson City’s water rights are vested and that appropriations were initiated prior to March 1913.
 

 [7]
 

 Seput
 
 v.
 
 Lacayo,
 
 122 Nev. 499, 502, 134 P.3d 733, 735 (2006).
 

 [8]
 

 Gaines v. State,
 
 116 Nev. 359, 365, 998 P.2d 166, 169-70 (2000).
 

 [9]
 

 SIIS v. Surman,
 
 103 Nev. 366, 368, 741 P.2d 1357, 1359 (1987).
 

 [10]
 

 Seput,
 
 122 Nev. at 502-03, 134 P.3d at 735;
 
 Torreyson
 
 v.
 
 Board of Examiners, 1
 
 Nev. 19, 22 (1871).
 

 [11]
 

 As AFA conceded at oral argument, a loss of priority undoubtedly amounts to an “impairment” of water rights.
 

 [12]
 

 Application of Filippini, 66
 
 Nev. 17, 21, 202 P.2d 535, 537 (1949).
 

 [13]
 

 See Ormsby County
 
 v.
 
 Kearney,
 
 37 Nev. 314, 352-53, 142 P. 803, 810 (1914). In
 
 Ormsby,
 
 we recognized that
 

 [t]he greater portion of the water rights upon the streams of the state were acquired before any statute was passed prescribing a method of appropriation. Such rights have uniformly been recognized by the courts as being vested under the common law of the state. Nothing in the act shall be deemed to impair these vested rights; that is, they shall not be diminished in quantity or value. As they are all prior in time to water rights secured in accordance with later statutory provisions, such priorities must be recognized.
 

 Id.
 
 Notably, the term “vested right” sometimes more generally refers to a right that “has become fixed and established either by diversion and beneficial use or by permit procured pursuant to the statutory water law relative to appropriation.”
 
 Filippini, 66
 
 Nev. at 22, 202 P.2d at 537. For purposes of this opinion, however, the term is used “to describe water rights which came into being by diversion and beneficial use prior to the enactment of any statutory water law, relative to appropriation.”
 
 Id.
 

 [14]
 

 Ormsby, 37 Nev. at 352-53, 142 P. at 810; NRS 533.085(1).
 

 [15]
 

 Silver Lake Water v. Public Serv. Comm’n,
 
 107 Nev. 951, 952 n.1, 823 P.2d 266, 267 n.1 (1991);
 
 see
 
 NRS 533.325-.380 (describing application and approval process for permits).
 

 [16]
 

 Silver Lake
 
 Water, 107 Nev. at 952 n.1, 823 P.2d at 267 n.1.
 

 [17]
 

 Desert Irrigation, Ltd. v. State of Nevada,
 
 113 Nev. 1049, 1059 n.5, 944 P.2d 835, 841 n.5 (1997);
 
 see Silver Lake Water,
 
 107 Nev. at 952 n.1, 823 P.2d at 267 n.1; NRS 533.325-,380 (describing application and approval process for permits).
 

 [18]
 

 Silver Lake Water,
 
 107 Nev. at 952 n.1, 823 P.2d at 267 n.1; NRS 533.325-.380 (describing application and approval process for permits).
 

 [19]
 

 In Re Waters of Manse Spring,
 
 60 Nev. 280, 289, 108 P.2d 311, 316 (1940).
 

 [20]
 

 NRS 533.325 states that “[a]ny person who wishes ... to change the place of diversion, manner of use or place of use of water already appropriated, shall . . . apply to the State Engineer for a permit to do so.”
 
 See also
 
 NRS 533.345 (setting forth application for modification requirements). However, the language of NRS 533.325 does not suggest that a party with vested rights intentionally abandons those rights by requesting a change of use permit.
 

 [21]
 

 37 Nev. 314, 142 P. 803 (1914).
 

 [22]
 

 Id.
 
 at 353, 142 P. at 810.
 

 [23]
 

 We note that although NRS 533.085 was not in existence at the time the court decided
 
 Ormsby,
 
 another provision containing similar language was part of Nevada’s Revised Laws.
 
 See
 
 Nev. Rev. Laws § 84 (1919). For purposes of simplicity, we will identify the applicable statutes by their current numeration.
 

 [24]
 

 Ormsby, 37 Nev. at 352, 142 P. at 810 (emphasis added).
 

 [25]
 

 Indeed, AFA specifically conceded this point during oral argument.
 

 [26]
 

 60 Nev. 280, 283-84, 108 P.2d 311, 313-14 (1940).
 

 [27]
 

 Id.
 
 at 289, 108 P.2d at 316.
 

 [28]
 

 Id.
 

 [29]
 

 113 Nev. 1049, 1059-60, 944 P.2d 835, 842 (1997).
 

 [30]
 

 Id.
 
 at 1051, 944 P.2d at 837.
 

 [31]
 

 Id.
 
 at 1053, 944 P.2d at 838. NRS 533.395(1) provides,
 

 If, at any time in the judgment of the State Engineer, the holder of any permit to appropriate the public water is not proceeding in good faith and with reasonable diligence to perfect the appropriation, the State Engineer shall require the submission of such proof and evidence as may be necessary to show a compliance with the law. If, in his judgment, the holder of a permit is not proceeding in good faith and with reasonable diligence to perfect the appropriation, the State Engineer shall cancel the permit, and advise the holder of its cancellation.
 

 [32]
 

 Desert Irrigation,
 
 113 Nev. at 1059, 944 P.2d at 841.
 

 [33]
 

 Id.
 
 at 1058-59, 944 P.2d at 841.
 

 [34]
 

 Id.
 
 at 1059, 944 P.2d at 842.
 

 [35]
 

 Id.
 
 at 1060, 944 P.2d at 842;
 
 see
 
 NRS 533.040(2) (providing that “[i]f at any time it is impracticable to use water beneficially or economically at the place to which it is appurtenant, the right may be
 
 severed
 
 from the place of use and be simultaneously transferred and become appurtenant to another place of use, in the manner provided in this chapter, without losing priority of right.’ ’ (emphasis added)).
 

 [36]
 

 Desert Irrigation,
 
 113 Nev. at 1060, 944 P.2d at 842.
 

 [37]
 

 A closer argument might exist under
 
 Desert Irrigation
 
 if the State Engineer had refused to reinstate Carson City’s permit because then the issue would be whether Carson City’s rights reverted to the public in the same manner as the certificated rights in
 
 Desert Irrigation.
 
 Even in that scenario, however,
 
 Desert Irrigation
 
 probably would not apply because prestatutory vested rights can only be lost by intentional abandonment.
 
 In Re Waters of Manse Spring,
 
 60 Nev. 280, 289, 108 P.2d 311, 316 (1940).
 

 [38]
 

 Ormsby County v. Kearney,
 
 37 Nev. at 314, 352-53, 142 P. 803 at 810 (1914).