138 Nev., Advance Opinion 43

# IN THE SUPREME COURT OF THE STATE OF NEVADA

DIAMOND NATURAL RESOURCES
PROTECTION & CONSERVATION
ASSOCIATION; J&T FARMS, LLC;
GALLAGHER FARMS LLC; JEFF
LOMMORI; M&C HAY; CONLEY LAND
& LIVESTOCK, LLC; JAMES
ETCHEVERRY; NICK ETCHEVERRY;
TIM HALPIN; SANDI HALPIN;
DIAMOND VALLEY HAY COMPANY,
INC.; MARK MOYLE FARMS LLC; D.F.
& E.M. PALMORE FAMILY TRUST;
WILLIAM H. NORTON; PATRICIA
NORTON; SESTANOVICH HAY &
CATTLE, LLC; JERRY ANDERSON;
BILL BAUMAN; DARLA BAUMAN;
ADAM SULLIVAN, P.E., NEVADA
STATE ENGINEER, DIVISION OF
WATER RESOURCES, DEPARTMENT
OF CONSERVATION AND NATURAL
RESOURCES; AND EUREKA COUNTY,
Appellants,
vs.
DIAMOND VALLEY RANCH, LLC;
AMERICAN FIRST FEDERAL, INC.;
BERG PROPERTIES CALIFORNIA,
LLC; BLANCO RANCH, LLC; BETH
MILLS, TRUSTEE OF THE MARSHALL
FAMILY TRUST; TIMOTHY LEE
BAILEY; CONSTANCE MARIE
BAILEY; FRED BAILEY; CAROLYN
BAILEY; SADLER RANCH, LLC; IRA R.
RENNER; AND MONTIRA RENNER,
Respondents.

No. 81224

FILED

JUN 16 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

22-19127

Appeal from a district court order granting petitions for judicial review in a water law matter. Seventh Judicial District Court, Eureka County; Gary Fairman, Judge.

*Reversed.*

Leonard Law, PC, and Debbie Leonard, Reno,
for Appellants Jerry Anderson; Bill Bauman; Darla Bauman; Conley Land & Livestock, LLC; D.F. & E.M. Palmore Family Trust; Diamond Natural Resources Protection & Conservation Association; Diamond Valley Hay Company, Inc.; James Etcheverry; Nick Etcheverry; Gallagher Farms LLC; Tim Halpin; Sandi Halpin; J&T Farms, LLC; Jeff Lommori; M&C Hay; Mark Moyle Farms LLC; William H. Norton; Patricia Norton; and Sestanovich Hay & Cattle, LLC.

Allison MacKenzie, Ltd., and Karen A. Peterson, Carson City; Theodore Beutel, District Attorney, Eureka County,
for Appellant Eureka County.

Aaron D. Ford, Attorney General, and James N. Bolotin, Senior Deputy Attorney General, Carson City,
for Appellant Adam Sullivan, P.E., Nevada State Engineer, Division of Water Resources, Department of Conservation and Natural Resources.

Kemp Jones, LLP, and Christopher W. Mixson and Don Springmeyer, Las Vegas,
for Respondents Timothy Lee Bailey, Constance Marie Bailey, Fred Bailey, and Carolyn Bailey.

Taggart & Taggart, Ltd., and David H. Rigdon and Paul G. Taggart, Carson City,
for Respondents Ira R. Renner, Montira Renner, and Sadler Ranch, LLC.

Marvel & Marvel, Ltd., and John E. Marvel, Elko,
for Respondents American First Federal, Inc.; Berg Properties California, LLC; Blanco Ranch, LLC; and Diamond Valley Ranch, LLC.

Beth Mills, Eureka,
in Pro Se.



Blanchard, Krasner & French and Steven M. Silva, Reno; Pacific Legal Foundation and Daniel M. Ortner, Sacramento, California, for Amicus Curiae Pacific Legal Foundation.

---

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, HARDESTY, J.:

Diamond Valley is a groundwater-dependent farming region located in Eureka County, Nevada. The Diamond Valley Hydrologic Basin is over-appropriated and over-pumped, such that groundwater withdrawals from the Basin exceed its perennial yield (i.e., more groundwater is withdrawn from the aquifer than what can be naturally replenished). To address the scarcity of groundwater in Nevada's over-appropriated basins, the Legislature enacted NRS 534.037 and NRS 534.110(7) in 2011.[1] Under NRS 534.110(7), the State Engineer may designate an over-appropriated basin a Critical Management Area (CMA). Once designated a CMA, NRS 534.037 allows water permit and certificate holders (rights holders) to petition the State Engineer to approve a Groundwater Management Plan (GMP) that sets forth the necessary steps for removal of the basin's designation as a CMA. In determining whether to approve the GMP, the State Engineer is required to weigh the factors under NRS 534.037(2).

Here, Diamond Valley was designated a CMA, and its rights holders submitted a GMP to the State Engineer for approval. Although the

---

[1]*See* 2011 Nev. Stat., ch. 265, §§ 1 & 3, at 1383-84 & 1387.

GMP deviated somewhat from the guiding principle underlying Nevada's water law statutes—the doctrine of prior appropriation, which dictates that priority is assigned based on first in time, first in right to put the water to beneficial use—the State Engineer approved the Diamond Valley GMP. The crux of this case, then, concerns whether NRS 534.037 and NRS 534.110(7) allow the State Engineer to approve a GMP that deviates from the doctrine of prior appropriation. We hold that the Legislature unambiguously gave the State Engineer discretion to approve a GMP that departs from the doctrine of prior appropriation and other statutes in Nevada's statutory water scheme. Thus, we conclude that the State Engineer's decision to approve the GMP was not erroneous. As we further conclude that the State Engineer's factual findings in support of his decision were supported by substantial evidence, we reverse the district court's order granting respondents' consolidated petitions for judicial review and reinstate the State Engineer's decision.

## FACTS AND PROCEDURAL HISTORY

We have previously recognized that groundwater "in Diamond Valley, Nevada, is over-appropriated and has been pumped at a rate exceeding its perennial yield for over four decades." *Eureka County v. Seventh Judicial Dist. Court (Sadler Ranch)*, 134 Nev. 275, 276, 417 P.3d 1121, 1122 (2018). Each year, roughly 76,000 acre-feet of groundwater is withdrawn from the Basin's aquifer, yet its perennial yield is only 30,000 acre-feet. Even more concerning, up to 126,000 acre-feet of water rights have been permitted in the Basin. If the State Engineer limited pumping in the Basin to its perennial yield, any appropriations made after roughly May 1960 would have junior priority and be subject to curtailment. Similarly, any water rights appropriated before that date would have seniority and would not be subject to curtailment.

As noted, in 2011, the Legislature enacted NRS 534.037 and amended NRS 534.110 to allow the State Engineer to approve a GMP that helps resolve groundwater shortages in over-appropriated basins like Diamond Valley, which was designated a CMA in 2015. In 2018, a majority of rights holders in Diamond Valley petitioned the State Engineer to approve their proposed GMP for the Basin. After holding a public hearing and allowing written comments, the State Engineer approved the GMP. State Engineer Order No. 1302 (Jan. 11, 2019). The GMP created a 35-year plan to reduce the amount of pumping from the Basin at 5-year intervals. The GMP reduced the amount of water that rights holders can use based on the priority of the holders' rights. However, the GMP deviated from the doctrine of prior appropriation by requiring *all* water rights holders to reduce their withdrawals from the Basin—not just junior rights holders.

Respondents, who are senior rights holders in the Basin, filed petitions for judicial review, which the district court consolidated. Respondents sought to invalidate the GMP on the ground that its deviance from water-law principles, such as the doctrine of prior appropriation, and from Nevada's statutory water scheme made the plan legally erroneous. The district court concluded that the GMP violated (1) the doctrine of prior appropriation by forcing senior appropriators to reduce their water use; (2) the beneficial use statute, NRS 533.035, by allowing unused groundwater to be banked or transferred; and (3) two permitting statutes, NRS 533.325 and NRS 533.345, by allowing appropriators to change the point or manner of diversion without filing an application with the State Engineer. The district court concluded that NRS 534.037 and NRS 534.110(7) do not give the State Engineer discretion to approve a GMP that deviates from the foregoing principle and statutes. Because the district

court decided that the State Engineer's legal conclusions were erroneous, it concluded that Order No. 1302 was arbitrary and capricious. Thus, the district court granted respondents' consolidated petitions for judicial review and invalidated Order No. 1302. Nonetheless, the district court found that the State Engineer's analysis of the factors under NRS 534.037(2) was supported by substantial evidence.

The State Engineer and several rights holders in the Basin (collectively, appellants) now appeal. They argue that the Legislature unambiguously gave the State Engineer discretion to approve a GMP that deviates from the doctrine of prior appropriation and other provisions in Nevada's statutory water scheme, so long as the State Engineer considers the factors enumerated in NRS 534.037(2) and determines that the GMP will remove the basin's designation as a CMA. Respondents contend the district court's order should be affirmed because the GMP reduces their water rights based on an erroneous interpretation of the law.

At oral argument, we asked respondents if they presented *any* evidence to the State Engineer during the GMP approval process showing whether—and to what extent—their water rights were affected by the GMP. Respondents answered, "[N]o, it was not quantified." We then inquired whether respondents requested the State Engineer make those calculations before approving the GMP. Respondents conceded that "[t]hey did not raise it as an issue in their written comments." Finally, we asked respondents whether they presented any calculus to the district court showing that *any* of their water rights were affected by the GMP. Respondents answered, "I don't think it was raised as a specific issue."

## DISCUSSION

*Standard of review*

"The decision of the State Engineer is prima facie correct, and the burden of proof is upon the party attacking the same." NRS 533.450(10). We perform the same review as the district court; thus, when we review a district court's order reversing the State Engineer's decision, "we determine whether the [State Engineer]'s decision was arbitrary or capricious." *King v. St. Clair*, 134 Nev. 137, 139, 414 P.3d 314, 316 (2018). A "capricious exercise of discretion is one . . . 'contrary to the evidence or established rules of law.'" *State v. Eighth Judicial Dist. Court (Armstrong)*, 127 Nev. 927, 931-32, 267 P.3d 777, 780 (2011) (citation omitted) (quoting *Capricious, Black's Law Dictionary* (9th ed. 2009)). "[W]e review purely legal questions [de novo,] without deference to the State Engineer's ruling." *Pyramid Lake Paiute Tribe of Indians v. Ricci*, 126 Nev. 521, 525, 245 P.3d 1145, 1148 (2010). However, "[w]e review the State Engineer's factual findings for an abuse of discretion and will only overturn those findings if they are not supported by substantial evidence." *Sierra Pac. Indus. v. Wilson*, 135 Nev. 105, 108, 440 P.3d 37, 40 (2019). "Substantial evidence is that which a reasonable mind could find adequate to support a conclusion." *Kolnik v. State, Emp't Sec. Dep't*, 112 Nev. 11, 16, 908 P.2d 726, 729 (1996).

*NRS 534.037 and NRS 534.110(7) plainly and unambiguously allow the State Engineer to approve a GMP that departs from the doctrine of prior appropriation and other statutes in Nevada's water scheme*

Appellants argue that NRS 534.110(7) unambiguously allows the State Engineer to approve a GMP that departs from the doctrine of prior appropriation. They also argue that a GMP may depart from other portions of Nevada's statutory water scheme so long as the State Engineer weighs the factors under NRS 534.037(2) and determines that the GMP will remove

the basin's designation as a CMA. Respondents assert that NRS 534.110(7) unambiguously provides that the State Engineer shall order priority-based curtailment if a GMP has not been approved for the basin, but any GMP must comply with the doctrine of prior appropriation. Respondents alternatively argue that, if the statute is ambiguous, the presumption against implied repeal and legislative history show that the Legislature did not intend to repeal the doctrine of prior appropriation.

The State Engineer concluded that NRS 534.037 and NRS 534.110(7) allow the approval of a GMP that departs from the doctrine of prior appropriation and other parts of Nevada's statutory water scheme. Because the State Engineer's conclusion invokes a question of law, we review it de novo. *Pyramid Lake Paiute Tribe*, 126 Nev. at 525, 245 P.3d at 1148. "Where a statute is clear and unambiguous, this court gives effect to the ordinary meaning of the plain language of the text without turning to other rules of construction." *Chandra v. Schulte*, 135 Nev. 499, 501, 454 P.3d 740, 743 (2019). We look beyond a statute's plain text only "if it is ambiguous or silent on the issue in question." *Allstate Ins. Co. v. Fackett*, 125 Nev. 132, 138, 206 P.3d 572, 576 (2009). "[W]hen a statute is susceptible to more than one reasonable interpretation, it is ambiguous . . . ." *Zohar v. Zbiegien*, 130 Nev. 733, 737, 334 P.3d 402, 405 (2014). Where a legal question invokes multiple statutes, we "construe [them] as a whole, so that all provisions are considered together and, to the extent practicable, reconciled and harmonized." *Cromer v. Wilson*, 126 Nev. 106, 110, 225 P.3d 788, 790 (2010).

Because we have not yet interpreted NRS 534.037 and NRS 534.110(7), we must now ascertain the meaning of these statutes. Under NRS 534.110(7)(a), the State Engineer "[m]ay designate as a critical

management area [(CMA)] any basin in which withdrawals of groundwater consistently exceed the perennial yield of the basin." Once the basin receives CMA designation, a majority of the rights holders in the basin may petition the State Engineer for "approval of a groundwater management plan [(GMP)] for the basin." NRS 534.037(1). The GMP "must set forth the necessary steps for removal of the basin's designation as a [CMA]." *Id.* Then, the State Engineer "shall consider" seven factors to determine whether to approve the GMP:

> (a) The hydrology of the basin;
>
> (b) The physical characteristics of the basin;
>
> (c) The geographic spacing and location of the withdrawals of groundwater in the basin;
>
> (d) The quality of the water in the basin;
>
> (e) The wells located in the basin, including, without limitation, domestic wells;
>
> (f) Whether a groundwater management plan already exists for the basin; and
>
> (g) Any other factor deemed relevant by the State Engineer.

NRS 534.037(2). If a basin has been designated as a CMA for 10 consecutive years, then NRS 534.110(7) dictates that "the State Engineer *shall* order that withdrawals . . . be restricted in that basin to conform to priority rights, *unless* a groundwater management plan has been approved for the basin pursuant to NRS 534.037." (Emphases added.)

Construing NRS 534.037 and NRS 534.110(7) together, we conclude that these statutes plainly and unambiguously allow the State Engineer to approve a GMP so long as the State Engineer concludes that the GMP (1) "set[s] forth the necessary steps for removal of the basin's designation as a [CMA]," *see* NRS 534.037(1), and (2) is warranted under

SUPREME COURT
OF
NEVADA

(O) 1947A

9

the seven factors enumerated in NRS 534.037(2).[2]  Moreover, NRS 534.110(7) plainly states that the State Engineer shall order curtailment by priority *unless* a GMP has been approved for the basin—indicating that a GMP could, but does not necessarily have to, comply with the doctrine of prior appropriation.  Thus, NRS 534.110(7) permits regulation in a manner inconsistent with the doctrine of prior appropriation if a GMP has been approved for the basin.  Because these statutes plainly allow the State Engineer to approve a GMP based on the preceding criteria,[3] and because they are silent as to other aspects of Nevada's statutory water scheme, we reject respondents' position that a GMP must strictly comply with the

---

[2]Insofar as respondents assert that our plain meaning interpretation is inconsistent with the presumption against implied repeal, we disagree. Under the implied-repeal canon, we presume that the Legislature does not intend to overturn existing law unless it does so expressly in the statutory text. *See Wilson v. Happy Creek, Inc.*, 135 Nev. 301, 307, 448 P.3d 1106, 1111 (2019).  However, the presumption against implied repeal does not apply where "the later act covers the whole subject of the earlier one and is clearly intended as a substitute." *Posadas v. Nat'l City Bank*, 296 U.S. 497, 503 (1936).  When a basin is designated as a CMA and a petition by a majority of rights holders is made to have a GMP approved, it is clear NRS 534.037 and NRS 534.110(7) are intended to exempt a GMP that meets the statutory requirements from other provisions in Nevada's statutory water scheme.  Thus, the presumption against implied repeal does not apply to this analysis.

[3]Before approving a GMP, the State Engineer must also comply with the public hearing and notice provisions of NRS 534.037(3).  As the district court found, the record indicates that the State Engineer complied with these provisions before approving Order No. 1302.  Insofar as respondents argue that the State Engineer did not comply with NRS 534.037(3), we reject this argument because respondents did not cite relevant portions of the record to support their assertions. *See* NRAP 28(a)(10)(A); *Allianz Ins. Co. v. Gagnon*, 109 Nev. 990, 997, 860 P.2d 720, 725 (1993) (stating that we need not consider arguments unsupported by citations to the record).

doctrine of prior appropriation. Moreover, because NRS 534.037 and NRS 534.110(7) are clear, there is no need to consult extratextual sources—such as legislative history or the statutory canons—to disambiguate these statutes. *See generally Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994) (explaining that legislative history should not be used to "cloud a statutory text that is clear").[4] Thus, we conclude that the State Engineer's legal conclusions were not erroneous: NRS 534.037 and NRS 534.110(7) allow the State Engineer to approve a GMP that departs from the doctrine of prior appropriation, so long as the State Engineer complies with the foregoing statutory criteria.

Our conclusion is supported by Nevada law providing that statutory law *may* impair nonvested water rights. *Cf.* NRS 533.085(1); *Andersen Family Assocs. v. Ricci*, 124 Nev. 182, 188, 179 P.3d 1201, 1204-05 (2008) (explaining that statutory law *may not* impair vested water rights (i.e., rights appropriated before 1913)). Extrapolating on this law, the Legislature has authority to modify the statutory scheme regulating nonvested water rights. We recently explained that the doctrine of prior appropriation is a fundamental principle in various statutory provisions. *See Mineral County v. Lyon County*, 136 Nev. 503, 513, 473 P.3d 418, 426 (2020). Thus, it follows that the Legislature may create a regulatory scheme

---

[4]Even if NRS 534.110(7) were ambiguous, the rule of the last antecedent supports our interpretation. *See Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (explaining that the rule of the last antecedent means that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows"). NRS 534.110(7)'s limiting clause—"unless a groundwater management plan has been approved"— immediately follows the text's mandate that withdrawals be restricted to conform to priority rights. Thus, it follows that the approval of a GMP allows the State Engineer to regulate a basin on a basis other than priority.

that modifies the use of water appropriated after 1913 in a manner inconsistent with the doctrine of prior appropriation. Accordingly, we reject respondents' argument that the State Engineer's legal conclusions in Order No. 1302 were erroneous[5] and therefore arbitrary and capricious.[6]

---

[5]Respondents argue that Order No. 1302 is erroneous because it does not assess whether the GMP affected vested water rights (i.e., rights appropriated before 1913), and the interference with their vested surface water rights invokes constitutional concerns. Order No. 1302 explained that before the GMP was approved, several parties in the Basin received mitigation rights for the loss of their senior surface water rights. Respondents' appellate briefs, however, do not cite portions of the administrative record to show that they presented the State Engineer with evidence to show that the GMP would affect their specific surface water rights or that they had not received adequate mitigation rights. *See Allianz*, 109 Nev. at 997, 860 P.2d at 725 (stating that we need not consider arguments unsupported by citations to the record); *see also Dubray v. Coeur Rochester, Inc.*, 112 Nev. 332, 337 n.2, 913 P.2d 1289, 1292 n.2 (1996) (stating that an argument is waived on appeal if it was not raised before the hearing officer). From this record, we are unable to conclude that the State Engineer acted capriciously because it is unclear the extent to which the GMP affected respondents' vested water rights. Although we decline to address respondents' arguments, our holding does not preclude respondents from asserting a future constitutional claim if the GMP actually affected their vested rights. We reiterate that our holding is limited to nonvested water rights because statutory law may not impair vested water rights. NRS 533.085(1).

[6]Because our interpretation of NRS 534.037 and NRS 534.110(7) concludes that a GMP is valid so long as the State Engineer makes appropriate findings under NRS 534.037(2) and determines that the GMP will remove the basin's designation as a CMA, we conclude that respondents' remaining arguments—including those pertaining to beneficial use and permitting requirements—are meritless. The State Engineer did precisely what the foregoing statutory provisions require before approving this GMP.

This leads to a needed discussion of the dissenting opinions. We begin by reiterating that NRS 534.037 and NRS 534.110(7), based on the foregoing analysis, are unambiguous. Insofar as the dissenting opinions cite the canon of constitutional avoidance and legislative history to interpret NRS 534.110(7), both interpretive tools cannot be consulted when, as here, the statutory text is plain and unambiguous.[7] *See generally Ratzlaf*, 510 U.S. at 147-48 (explaining that legislative history should not be used when the text is clear); *see also Warger v. Shauers*, 574 U.S. 40, 50 (2014) (stating that the avoidance canon cannot be used if statutory text is unambiguous). Because these statutes are unambiguous, we decline to resort to legislative history or the avoidance canon.

We reiterate that our holding, consistent with the plain meaning of NRS 534.110(7), applies only to priority rights and does not impair vested water rights. Thus, although our dissenting colleagues contend that we have abrogated existing water law, our holding *qualifies*—rather than abrogates—the prior appropriation and beneficial use doctrines *only* in the context of priority rights existing in an over-appropriated basin that has been designated a CMA. Moreover, the GMP here ratably reduces water usage such that senior appropriators are still allowed more water

---

[7]We are unable to determine whether Justice Pickering concludes that NRS 534.110(7) is ambiguous. *Compare* Dissenting op., *post.* at 2 (Pickering, J., dissenting) ("To the extent that the majority's reading is reasonable, then, this legal text is at best ambiguous, which opens the door to legislative history."), *with id.* at 12 ("For these reasons, and the additional reasons stated in Chief Justice Parraguirre's dissent, *which I join except as to its finding of ambiguity*, I respectfully dissent." (emphasis added)). In any event, Justice Pickering's dissent consults grammatical canons to interpret NRS 534.110(7), *see id.* at 3-4, but the parties' briefs do not cite these canons. Thus, we are unpersuaded that our plain meaning interpretation of NRS 534.037 and NRS 534.110(7) is incorrect.

than junior appropriators, and in that regard, still honors priority rights and therefore does not abrogate them.

We must separately address Justice Pickering's dissent for three reasons. First, it interprets NRS 534.037 and NRS 534.110(7) in a manner that would render these statutes nugatory. Her dissent explains that we erred by not considering these statutes "in the larger context of NRS 534.110 and NRS Chapters 533 and 534 as a whole." Dissenting op., *post.* at 7 (Pickering, J., dissenting). It specifies that, "[a]llowing the State Engineer to approve a GMP that deviates from the prior appropriation and beneficial use doctrines puts NRS 534.037 and NRS 534.110(7) into direct conflict with the rest of NRS Chapters 533 and 534." *Id.* at 8. We disagree. To the contrary, if a GMP were required to comply with every statute in NRS Chapters 533 and 534, there would have been no need for the Legislature to enact NRS 534.037 and NRS 534.110(7).[8]

Indeed, it is dubious that the Legislature would have enacted these statutes if it believed that existing statutory provisions allowed the State Engineer to regulate an over-appropriated basin. If we were to adopt Justice Pickering's construction, NRS 534.037 and NRS 534.110(7) would be meaningless because the State Engineer would have no power—beyond what is already conferred by NRS Chapters 533 and 534—to regulate over-appropriated basins. Thus, these statutes would be rendered nugatory. *See Clark County v. S. Nev. Health Dist.*, 128 Nev. 651, 656, 289 P.3d 212, 215 (2012) ("Statutes should be read as a whole, so as not to render superfluous

---

[8]Justice Pickering's dissent also avers that NRS 534.110(7)'s text should be read "fairly" and that "a reasonable reader" would reject the majority's interpretation. *See* Dissenting op., *post.* at 3 (Pickering, J., dissenting). We are unpersuaded that our interpretation of NRS 534.110(7) is untenable such that we should apply this novel interpretive method.

SUPREME COURT
OF
NEVADA

(O) 1947A

14

words or phrases or make provisions nugatory."). Because this would lead to an *absurd* result, we disagree with Justice Pickering's interpretation of NRS 534.037 and NRS 534.110(7).

Second, our dissenting colleague seemingly relies on unpassed legislation to interpret NRS 534.110(7). Dissenting op., *post.* at 11-12 (Pickering, J., dissenting). Justice Pickering suggests that the State Engineer proposed legislation in 2016 to amend NRS 534.110(7) to expressly allow a GMP to deviate from priority regulation because NRS 534.110(7) does not allow this deviation. *Id.* at 11-12. Unpassed legislation, however, has little value when interpreting a statute. *See Pension Benefit Guar. Corp. v. The LTV Corp.*, 496 U.S. 633, 650 (1990) (explaining that unpassed legislation is "a particularly dangerous ground on which to rest an interpretation of a prior statute"); *see also Grupe Dev. Co. v. Superior Court*, 844 P.2d 545, 552 (Cal. 1993) (holding the same). This is because proposed legislation that was not adopted leads to conflicting inferences. As Justice Pickering concludes, the State Engineer may have believed that NRS 534.110(7) did not allow a GMP to depart from priority regulation. Dissenting op., *post.* at 11-12 (Pickering, J., dissenting). However, it can just as easily be inferred that the Legislature rejected this bill because it felt that the existing statutory text already allowed the State Engineer to depart from priority regulation. Due to these conflicting inferences, we conclude that the best approach here is to enforce the law as written. *See generally Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.*, 550 U.S. 81, 119 (2007) (Scalia, J., dissenting) (explaining that "legislated text" should prevail over "legislators' intentions"). For these reasons, we conclude that the unpassed legislation cited in Justice Pickering's dissent is unpersuasive.

Third, we decline to reach constitutional questions, such as the Takings Clause analysis identified by Justice Pickering, that are not essential to this decision.[9] *See Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 205 (2009) (explaining that constitutional questions should not be decided if there is another ground on which to rest the disposition of the case). As noted, a plain meaning interpretation of NRS 534.037 and NRS 534.110(7) leads to the inescapable conclusion that the State Engineer may approve a GMP that deviates from priority regulation. Thus, we need not reach the Takings Clause to resolve this appeal.

Further, concluding otherwise would result in an advisory opinion because respondents failed to show that a controversy exists. *See Capanna v. Orth*, 134 Nev. 888, 897, 432 P.3d 726, 735 (2018) (explaining that we lack the power to render advisory opinions); *see also Herbst Gaming, Inc. v. Heller*, 122 Nev. 877, 887, 141 P.3d 1224, 1231 (2006) ("Alleged harm that is speculative or hypothetical is insufficient: an existing controversy must be present."). As noted, during oral argument, respondents conceded that they never presented any evidence to the State Engineer or the district court to show that the GMP here affected their vested water rights. In fact, they conceded that any Takings Clause claim "would certainly come later." Respondents' briefs, other than a vague reference to the Takings Clause, likewise fail to identify whether they lost *any* water rights under this GMP,

---

[9]We note that Chief Justice Parraguirre's dissent addresses the Takings Clause issue only as a matter of statutory interpretation, given his finding of ambiguity in NRS 534.110(7). Justice Pickering's dissent goes further and seemingly concludes the GMP here effectuates a taking such that the State Engineer "is constitutionally required to provide just compensation and process." Dissenting op., *post.* at 10 (Pickering, J., dissenting) (internal quotation marks omitted).

SUPREME COURT
OF
NEVADA

(O) 1947A

16

let alone whether any rights that may have been lost were vested water rights. Given that respondents failed to preserve or assert any constitutional claim for our review, they have not shown that an actual controversy exists. We therefore decline to address any constitutional issue herein because doing so would lead to an advisory opinion. As previously emphasized, however, our holding does not preclude respondents from seeking future relief if their vested water rights were impaired by the GMP.

Given our conclusion that the GMP was not arbitrary or capricious, we now examine whether the State Engineer's factual findings for Order No. 1302 were supported by substantial evidence.

*The factual findings for Order No. 1302 are supported by substantial evidence, and therefore, the State Engineer did not abuse his discretion*

Appellants argue that the State Engineer's decision to approve Order No. 1302 was supported by substantial evidence and point to the extensive findings supporting the GMP. Respondents assert that the State Engineer's decision to approve the GMP was unsupported by substantial evidence because the administrative record is devoid of scientific or technical evidence to show that the GMP would balance the Basin's withdrawals with its perennial yield. We disagree.

We will uphold the State Engineer's factual findings for Order No. 1302 if they are supported by substantial evidence. *Sierra Pac. Indus. v. Wilson*, 135 Nev. 105, 108, 440 P.3d 37, 40 (2019). As a threshold issue, the record indicates that the majority of the Basin's permit and certificate holders petitioned the State Engineer to approve the GMP. *See* NRS 534.037(1). Thus, the State Engineer was required to weigh the factors under NRS 534.037(2) to determine whether the GMP was valid.

Before approving the GMP as Order No. 1302, the State Engineer made extensive findings under NRS 534.037(2). The State

Engineer examined the Basin's (1) hydrology, (2) physical characteristics, (3) geographic spacing of withdrawals, (4) water quality, and (5) well locations. After weighing these factors, the State Engineer concluded that the proposed GMP would ultimately reduce withdrawals in the Basin to conform to its perennial yield. Given that the State Engineer, as set forth in his appendix, methodically considered the NRS 534.037 factors and concluded that the GMP would reduce withdrawals to the Basin's perennial yield—which would remove the Basin's designation as a CMA—substantial evidence supports the decision to approve the GMP. To that end, the district court concluded that the State Engineer properly weighed the NRS 534.037(2) factors to conclude that the GMP would balance the Basin back to its perennial yield.

Thus, we reject respondents' argument that the State Engineer's factual findings were unsupported by substantial evidence. Despite respondents' suggestion that the record is devoid of scientific or technical evidence to support Order No. 1302, this contention is meritless because of the foregoing explanation describing the State Engineer's extensive scientific findings. The district court likewise found that the State Engineer's findings supporting Order No. 1302 were supported by substantial evidence. Moreover, we are not in a position to reject the State Engineer's factual findings regarding scientifically complex matters. *See Wilson v. Pahrump Fair Water, LLC*, 137 Nev. 10, 16, 481 P.3d 853, 858 (2021) (explaining that our deference to the State Engineer's judgment "is especially warranted" when "technical and scientifically complex" issues are involved). Because the record shows that the State Engineer's factual findings were supported by substantial evidence, the decision to approve Order No. 1302 does not constitute an abuse of discretion. Accordingly, the

State Engineer's decision to approve Order No. 1302 is entitled to deference.[10]

*CONCLUSION*

We have recognized generally that water in this state "is a precious and increasingly scarce resource," *Bacher v. Office of the State Eng'r*, 122 Nev. 1110, 1116, 146 P.3d 793, 797 (2006), and specifically that Diamond Valley has been an over-appropriated basin for more than four decades, *Eureka County v. Seventh Judicial Dist. Court (Sadler Ranch)*, 134 Nev. 275, 276, 417 P.3d 1121, 1122 (2018). The Legislature enacted NRS 534.037 and NRS 534.110(7) to address the critical water shortages in Nevada's over-appropriated basins. These statutes plainly give the State Engineer discretion to approve a GMP that does not strictly comply with Nevada's statutory water scheme or strictly adhere to the doctrine of prior appropriation. The State Engineer is only required to weigh the factors under NRS 534.037(2) and determine that the GMP sets forth the necessary steps for the removal of the basin's designation as a CMA. Here, the State Engineer did precisely what NRS 534.037 and NRS 534.110(7) require before approving Order No. 1302.

We recognize that our opinion will significantly affect water management in Nevada. We are of the belief, however, that—given the arid nature of this State—it is particularly important that we effectuate the plain meaning of a statute that encourages the sustainable use of water. *See generally Wilson v. Happy Creek, Inc.*, 135 Nev. 301, 311, 448 P.3d 1106, 1114 (2019) (explaining the importance of using water sustainably). The

---

[10]Insofar as appellants raise issues not addressed herein, including the district court's alleged reliance on evidence outside of the record, we conclude that we need not reach them given the disposition of this appeal.

GMP here is a community-based solution to the long-term water shortages that befall Diamond Valley. Because the GMP complies with NRS 534.037 and NRS 534.110(7), it is valid. Thus, we reverse the district court order granting respondents' petitions for judicial review and reinstate Order No. 1302.

_____, J.
Hardesty

We concur:

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Herndon

PARRAGUIRRE, C.J., with whom SILVER, J., agrees, dissenting:

I respectfully dissent from my colleagues for two reasons. First, I disagree that NRS 534.037 and NRS 534.110(7) plainly and unambiguously allow the State Engineer to approve a Groundwater Management Plan (GMP) that departs from the doctrine of prior appropriation. Rather, NRS 534.037 is silent on the issue and NRS 534.110(7) is ambiguous because it is subject to two equally plausible interpretations. Thus, this court must look beyond the text of these statutes to the canons of statutory construction, as well as to legislative history, both of which show that the Legislature did not intend to abrogate 155 years of water law when enacting NRS 534.037 and NRS 534.110(7). Moreover, the majority's interpretation of these statutes could raise constitutional doubts. Second, Order 1302 erroneously abdicates the beneficial use requirement and fails to consider whether curtailment will impair vested surface water rights. For these reasons, I would hold that Order 1302 is capricious, and thus, I respectfully dissent.

## FACTS

As explained by the majority, this GMP seeks to reduce groundwater withdrawals in the Diamond Valley Basin. In doing so, the GMP requires senior appropriators to use less water than they are entitled to under the doctrine of prior appropriation. For instance, if a senior appropriator was entitled to 100 acre-feet of water per year, the GMP allows that appropriator to use only 67 acre-feet per year during the first 5 years of the plan. Meanwhile, a junior appropriator, who is not entitled to any water under the doctrine of prior appropriation, would be allowed to use 54 acre-feet of water per year during the first 5 years of the plan. By year 35 of the GMP, the same senior appropriator would be allowed only 30 acre-feet of water per year, whereas the same junior appropriator would be

allowed 24 acre-feet of water. Further, the GMP creates a novel water-banking system that allows appropriators to buy, sell, or lease their water rights to other appropriators, even if the water rights have not been put to beneficial use.

## DISCUSSION

### Standard of review

On a petition for judicial review, "we determine whether the [State Engineer]'s decision was arbitrary or capricious." *King v. St. Clair*, 134 Nev. 137, 139, 414 P.3d 314, 316 (2018). A decision that is contrary to established law is capricious. *State v. Eighth Judicial Dist. Court (Armstrong)*, 127 Nev. 927, 931-32, 267 P.3d 777, 780 (2011) (citation omitted).

### The doctrine of prior appropriation

Before turning to NRS 534.037 and NRS 534.110(7), a discussion of the prior appropriation doctrine is necessary to show why the Legislature did not intend to abrogate long-standing law. Nevada's water law is founded on a fundamental principle—*prior appropriation*. However, the majority considers the doctrine of prior appropriation a mere "guiding principle." *See* Majority op., *ante* at 4. This description of the doctrine understates the importance it has played in the development of the Western United States, and even more importantly, in the development of Nevada's water-law jurisprudence.

This court adopted the doctrine of prior appropriation 155 years ago by explaining that the first appropriator of water has a *right* to use that water to the extent of the original appropriation. *See Lobdell v. Simpson*, 2 Nev. 274, 277-78 (1866). Our adherence to the doctrine of prior appropriation has been unwavering. As we restated recently, "Nevada's water statutes embrace prior appropriation as a *fundamental* principle."

*Mineral County v. Lyon County*, 136 Nev. 503, 513, 473 P.3d 418, 426 (2020) (emphasis added) (explaining that water rights are given subject to existing rights based on the date of priority). Thus, we held that adjudicated water rights cannot be reallocated unless the reallocation comports with the doctrine of prior appropriation. *Id.* at 520, 473 P.3d at 431. The United States Supreme Court likewise acknowledges that Nevada follows the prior appropriation doctrine. *See Cappaert v. United States*, 426 U.S. 128, 139 n.5 (1976) ("Under Nevada law water rights can be created only by appropriation for beneficial use."). Moreover, the Legislature expressly provided that the doctrine applies to groundwater. *See* NRS 534.020.

In sum, the doctrine of prior appropriation is more than just a "guiding principle." The prior appropriation doctrine—*for over a century*—has been fundamental to water law in Nevada.

*NRS 534.110(7) does not allow the State Engineer to approve a GMP that departs from the doctrine of prior appropriation*

The majority concludes that NRS 534.037 and NRS 534.110(7) unambiguously allow the State Engineer to approve a GMP that departs from the prior appropriation doctrine. I disagree because NRS 534.037 does not speak to the doctrine of prior appropriation, much less authorize the State Engineer to disregard the doctrine. Further, as explained below, the canon against implied repeal, legislative history, and the canon of constitutional avoidance show that the Legislature did not intend for NRS 534.110(7) to authorize such an action by the State Engineer.

*NRS 534.110(7) is ambiguous*

We look beyond a statute's text only "if it is ambiguous." *Allstate Ins. Co. v. Fackett*, 125 Nev. 132, 138, 206 P.3d 572, 576 (2009). "Where a statute's language is ambiguous . . . the court must look to legislative history and rules of statutory interpretation to determine its meaning." *Orion Portfolio Servs. 2, LLC v. County of Clark*, 126 Nev. 397,

(O) 1947A

402, 245 P.3d 527, 531 (2010). "A statute's language is ambiguous when it is capable of more than one reasonable interpretation." *Id.*

NRS 534.110(7) is ambiguous because, as the parties' arguments show, it is susceptible to more than one reasonable interpretation. Specifically, NRS 534.110(7)'s relevant language—"[i]f a basin has been designated as a critical management area for at least 10 consecutive years . . . the State Engineer *shall* order that withdrawals . . . be restricted in that basin to conform to priority rights, *unless a groundwater management plan has been approved for the basin*" (emphases added)—yields two reasonable interpretations. First, as appellants argue, this language could be interpreted to mean that *if* the State Engineer approves a GMP, the GMP may order withdrawals that do not "conform to priority rights," i.e., deviate from the prior appropriation doctrine. Alternatively, as respondents argue, this language could be interpreted just as reasonably to mean that the statute mandates that the State Engineer *shall* begin to restrict withdrawals *by priority* if a basin has been designated as a critical management area for the 10-year statutory period and no GMP has been approved. But if a GMP *has been* approved for the basin, respondents contend that the language simply provides that the State Engineer may choose not to order curtailment. Both interpretations are reasonable, thereby rendering NRS 534.110(7) ambiguous.

Having concluded that NRS 534.110(7) is ambiguous, we must consult the rules of statutory interpretation and legislative history.

*Implied repeal*

Under the canon against implied repeal, "[t]he Legislature is presumed not to intend to overturn long-established principles of law when enacting a statute." *Wilson v. Happy Creek, Inc.*, 135 Nev. 301, 307, 448

P.3d 1106, 1111 (2019) (internal quotation marks omitted); *see also Ramsey v. City of North Las Vegas*, 133 Nev. 96, 112, 392 P.3d 614, 626 (2017) ("[R]epeals by implication are disfavored—*very much disfavored.*" (emphasis added)). "The presumption is always against the intention to repeal where express terms [of repeal] are not used." *Presson v. Presson*, 38 Nev. 203, 208-09, 147 P. 1081, 1082 (1915) (internal quotation marks omitted). Indeed, there is a presumption that legislatures "do[ ] not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—[they] do[ ] not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001).

I agree with respondents' proposed interpretation of NRS 534.110(7) because appellants' interpretation would abrogate the prior appropriation doctrine without an express declaration in the statutory text. Indeed, the majority's interpretation hides elephants in mouseholes because NRS 534.110(7) does not expressly permit the State Engineer to approve a GMP that departs from the doctrine of prior appropriation, which has underpinned this State's water laws as a fundamental principle. As both the United States Supreme Court and this court have recognized, Nevada follows the prior appropriation doctrine. Here, however, Order 1302—by the State Engineer's own admission—does not comport with the prior appropriation doctrine. We cannot assume that the Legislature intended a *fundamental* and *significant* departure from 155 years of water law without express statutory text supporting this result. Thus, the canon against implied repeal supports respondents' interpretation.

*Legislative history*

Legislative history supports the conclusion that NRS 534.110(7) was not intended to allow the State Engineer to adopt a GMP inconsistent with the doctrine of prior appropriation. In 2011,

Assemblyperson Pete Goicoechea, the sponsor of Assembly Bill 419 (seeking enactment of NRS 534.110), discussed how GMPs would treat priority rights. He first stated, "Water rights in Nevada are first in time[,] first in right. The older the water right, the higher the priority. We would address the newest permits and work backwards to get basins back into balance." Hearing on A.B. 419 Before the Senate Gov't Affairs Comm., 76th Leg., at 13 (Nev., May 23, 2011). Assemblyperson Goicoechea then stated, "This bill allows people in over[-]appropriated basins ten years to implement a water management plan to get basins in balance. *People with junior rights will try to figure out how to conserve enough water under these plans.*" *Id.* at 16 (emphasis added). This legislative history makes clear that junior—not senior—appropriators have the burden of reducing water usage under a GMP, which means that senior water rights have priority. Thus, legislative history supports respondents' interpretation of NRS 534.110(7).

*Constitutional avoidance*

An interpretation of NRS 534.037 and NRS 534.110(7) that departs from priority regulation could raise constitutional doubt under the Takings Clause. Consequently, I address the canon of constitutional avoidance, Nevada's long-standing treatment of water rights as property rights, and how the GMP could constitute an unconstitutional physical taking. Based on this analysis, I conclude that respondents' proposed interpretation of NRS 534.037 and NRS 534.110(7) should be adopted because it avoids constitutional doubts under the Takings Clause.

This court has explained that it "may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems." *Degraw v. Eighth Judicial Dist. Court*, 134 Nev. 330, 333, 419 P.3d 136, 139 (2018) (internal quotation marks omitted).

"The Takings Clause of the Fifth Amendment provides that private property shall not 'be taken for public use, without just compensation.'" *Murr v. Wisconsin*, ___ U.S. ___, ___, 137 S. Ct. 1933, 1942 (2017) (quoting U.S. Const. amend. V); *see also* Nev. Const. art. 1, § 8(3) ("Private property shall not be taken for public use without just compensation having been *first* made . . . ." (emphasis added)). "When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner," and this duty applies "regardless of whether the interest that is taken constitutes an entire parcel or merely a part thereof." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002).

We have explained that "[f]or a taking to occur, a claimant must have a stick in the bundle of property rights." *ASAP Storage, Inc. v. City of Sparks*, 123 Nev. 639, 647, 173 P.3d 734, 740 (2007) (internal quotation marks omitted). "The bundle of property rights includes all rights inherent in ownership, including the inalienable right to possess, use, and enjoy the property." *Id.* (internal quotation marks omitted).

We have concluded that water rights are alienable, *Adaven Mgmt., Inc. v. Mountain Falls Acquisition Corp.*, 124 Nev. 770, 781, 191 P.3d 1189, 1196 (2008), allow the rights holder to enjoy the water, *Lobdell*, 2 Nev. at 277-78, and allow the rights holder to beneficially use the water, *Bacher v. Office of State Eng'r*, 122 Nev. 1110, 1116, 146 P.3d 793, 797 (2006). Of course, a prior appropriator also has the right to exclude others from using their water. *See Application of Filippini*, 66 Nev. 17, 21-22, 202 P.2d 535, 537 (1949) (explaining that priority rights are protected to the extent of the original appropriation). Thus, Nevada's water law gives senior appropriators at least three sticks in the bundle of property rights: the right

to transfer, the right of use and enjoyment, and the right to exclude. Priority rights, therefore, are subject to the Takings Clause.

Based on three United States Supreme Court cases, I posit that requiring senior appropriators to pump less groundwater—and possibly reallocate that water to a nonbeneficial use—before junior appropriators are forced to cease pumping that same groundwater could be a compensable physical taking under the Fifth Amendment. *See Dugan v. Rank*, 372 U.S. 609, 625 (1963) (holding that the government's confiscation of surface water rights without compensation was a physical taking); *United States v. Gerlach Live Stock Co.*, 339 U.S. 725, 755 (1950) (holding the same); *Int'l Paper Co. v. United States*, 282 U.S. 399, 405-07 (1931) (holding the same); *see also Washoe County, Nev. v. United States*, 319 F.3d 1320, 1326 (Fed. Cir. 2003) ("In the context of water rights, courts have recognized a physical taking where the government has . . . decreased the amount of water accessible by the owner of the water rights.").

Further, it is *crucial* to explain that priority rights are property subject to constitutional protection regardless of whether they are pre-statutory rights. Our recent jurisprudence generally uses the term "vested" water rights to describe appropriative rights "that existed under Nevada's common law before the provisions currently codified in NRS Chapter 533 were enacted in 1913." *Andersen Family Assocs. v. Ricci*, 124 Nev. 182, 188, 179 P.3d 1201, 1204 (2008) (explaining that pre-statutory rights cannot be impaired by statutory law). However, we have rejected the notion that post-statutory water rights—i.e., those appropriated *after* 1913—are not protected as real property. *See Filippini*, 66 Nev. at 21-22, 202 P.2d at 537 (explaining that priority rights are regarded and protected as real property regardless of whether the right existed prior to the enactment of Nevada's

statutory water law). Thus, water rights appropriated after 1913 are still entitled to constitutional protection as property rights.

Accordingly, an interpretation of NRS 534.037 and NRS 534.110(7) that allows the State Engineer to depart from priority regulation and possibly reallocate senior water rights—without compensation following an eminent domain proceeding—could be an unconstitutional physical taking under the Nevada and United States Constitutions. The respondents have presented a plausible statutory interpretation that avoids these doubts, and therefore, their interpretation should prevail.[1]

*Conclusion*

To summarize, all tools of statutory interpretation point to a simple result: NRS 534.037 and NRS 534.110(7) are intended to allow all rights holders in an over-appropriated basin to create a collaborative GMP to reduce withdrawals from the basin, with the onus being on the junior appropriators to reduce water use. If the rights holders approve the GMP, the State Engineer need not order curtailment by priority. If, however, the rights holders do not approve the GMP, then the State Engineer must order curtailment by priority. Thus, these statutes were intended to inspire junior appropriators to collaboratively reduce water use or risk curtailment. Senior appropriators should not have to, and were not intended to, bear this burden.

---

[1]I express no view on whether a taking occurred in this case. Although the GMP plainly decreases the amount of water that senior appropriators in Diamond Valley can utilize, the record in this case is insufficient to determine whether, and to what extent, the respondents' water rights were affected by the GMP.

*Order 1302 departs from other laws*

In addition to the concerns above, Order 1302 violates the beneficial use statute and does not account for vested surface water rights.

*The GMP does not comply with the beneficial use statute*

Order 1302 provides that "[u]nused allocations [of water] may be banked, traded, leased or sold; thus, the GMP employs a market-based approach." It also states, "Section 13.9 of the GMP allows unused allocations to be carried over and banked for use in a subsequent year to increase the amount of water the rights holder can use in the next year."

The cornerstone of allocation—beneficial use—is "the basis, the measure and the limit of the right to use of water," NRS 533.035, and this requirement defines the extent of water rights. Thus, for every application to appropriate water, a "fundamental requirement . . . is that water only be appropriated for beneficial use." *Bacher*, 122 Nev. at 1116, 146 P.3d at 797 (internal quotation marks omitted). "When the necessity for the use of water does not exist, the right to divert it ceases . . . ." NRS 533.045. "Accordingly, beneficial use underpins Nevada's water statutes, and the Legislature has continued to delineate and expand on which uses are considered public uses in Nevada." *Mineral County*, 136 Nev. at 514, 473 P.3d at 427.

The GMP departs from Nevada's beneficial use statute because it allows *unused* water to be banked, sold, traded, or leased rather than allocating water based on beneficial use. *Cf.* NRS 533.045 (providing that the right to use water ceases if not put to beneficial use). Appellants provide no citation to any law allowing water banking in Nevada. They also cite no persuasive authority that suggests that water banking is a public use that qualifies as beneficial use. Simply put, there appears to be no binding or persuasive authority that classifies water banking as a beneficial use in a

prior appropriation jurisdiction. Because the GMP contravenes laws delineating beneficial use (i.e., it allows unused water rights to be retained), it is contrary to established law. Thus, I would hold that the State Engineer's decision to approve Order 1302 was capricious.[2]

*The GMP does not account for vested surface water rights*

In Order 1302, the State Engineer concluded that, under NRS 534.037, a GMP need not reduce groundwater pumping to preserve surface water rights, and thus, the GMP proponents need not consider its effect on surface water rights.

Vested water rights "may not be impaired by statutory law and may be used as granted in the original decree until modified by a later permit." *Andersen Family Assocs.*, 124 Nev. at 188, 179 P.3d at 1204-05. As noted, our recent jurisprudence generally uses the term "vested" water rights to describe appropriative rights "that existed under Nevada's common law before the provisions currently codified in NRS Chapter 533 were enacted in 1913." *Id.* at 188, 179 P.3d at 1204.

Here, the Diamond Valley GMP does not account for its effect on vested surface water rights. For that reason, whether the GMP actually impairs vested surface water rights is unclear. Because statutory law may not impair vested rights, a GMP approved under NRS 534.037 must account for its effect on vested surface water rights under NRS 534.037(2)(g). Accordingly, the State Engineer's contrary conclusion—that a GMP need

---

[2]The GMP also departs from NRS 533.325 and NRS 533.345, which require an appropriator of water to file an application with the State Engineer whenever changing "the place of diversion, manner of use or place of use of water already appropriated." The GMP here deviates from this law because it allows appropriators (so long as the amount of water they use does not increase) to change the place of diversion, manner of use, or place of use of the water without filing an application with the State Engineer. For this additional reason, the GMP is capricious.

not account for vested surface water rights—was capricious because established law requires the preservation of vested rights.

*CONCLUSION*

I recognize that the groundwater shortages that befall Diamond Valley and Nevada are of great concern to the public. However, I do not believe that these concerns allow this court to interpret NRS 534.037 and NRS 534.110(7) contrary to Nevada's historical water law. The constitution controls over any legislative act, and therefore, this court should adopt an interpretation of NRS 534.037 and NRS 534.110(7) that avoids constitutional violence. Respondents' interpretation of NRS 534.110(7) is compelling and well supported by the canons of statutory construction and legislative history. I would affirm the district court's decision to grant respondents' petition for judicial review because it is my firm belief that Order 1302 is capricious. Therefore, I respectfully dissent.

_____, C.J.
Parraguirre

I concur:

_____, J.
Silver

PICKERING, J., with whom SILVER, J., agrees, dissenting:

State Engineer Order 1302 approves a groundwater management plan (GMP) that effectively reallocates a percentage of senior water rights to junior water right holders, then ratably reduces water use across the board for a period of 35 years. The GMP does not compensate—or provide a mechanism for compensating—the senior water right holders. And in making its calculations, the GMP presumes but does not require beneficial use of the water rights it counts. These features place the GMP in direct conflict with the two fundamental principles underlying Nevada's water law statutes: the prior appropriation doctrine, which holds "first in time is first in right," such that, in times of shortage, "[t]he early appropriator of water prevails over a later appropriator," Ross E. deLipkau & Earl M. Hill, *The Nevada Law of Water Rights* 3-17 (2010); and the beneficial use doctrine, which holds that "[b]eneficial use shall be the basis, the measure and the limit of the right to the use of water" in Nevada, NRS 533.035. *See Mineral County v. Lyon County*, 136 Nev. 503, 513, 473 P.3d 418, 426 (2020) ("Nevada's water statutes embrace prior appropriation as a fundamental principle"; "[t]he other fundamental principle that [Nevada's] water statutes embrace is beneficial use.").

The majority opines that, on a "plain text" reading, NRS 534.110(7) and NRS 534.037 "plainly and unambiguously allow the State Engineer to approve a GMP that departs from the doctrine of prior appropriation and other statutes in Nevada's water scheme." Majority op. at 7. Nothing in the text of either statute expressly exempts GMPs from the prior appropriation and beneficial use doctrines. Instead, the majority infers the exemptions it declares from the fact that NRS 534.110(7) mandates the State Engineer to order curtailment in certain instances, then provides a mechanism for avoiding the mandate; and from NRS 534.037's

silence on prior appropriation and beneficial use. But as Chief Justice Parraguirre develops in his separate dissent, the text of NRS 534.110(7) and NRS 534.037 can as easily—and more grammatically—be read to say GMPs are fully subject to the prior appropriation and beneficial use doctrines. To the extent that the majority's reading is reasonable, then, this legal text is at best ambiguous, which opens the door to legislative history. *See Coleman v. State*, 134 Nev. 218, 219, 416 P.3d 238, 240 (2018). And here, the legislative history supports Chief Justice Parraguirre's reading, not the majority's. *See* Dissenting op. at 6 (Parraguirre, C.J.).

I write separately from Chief Justice Parraguirre because of another, more basic problem with the majority's approach: "In ascertaining the plain meaning of [a] statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) (Kennedy, J.). A court does not determine a statute's meaning by reading its words out of context, in isolation from the body of statutes it inhabits. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 252 (2012) ("Statutes *in pari materia* are to be interpreted together, as though they were one law."). The two statutes on which the majority relies, NRS 534.110(7) and NRS 534.037, are part of NRS Chapters 533 and 534. Since NRS Chapters 533 and 534 incorporate the prior appropriation and beneficial use doctrines, so do NRS 534.110(7) and NRS 534.037. Unless and until the Legislature expressly exempts GMPs from these doctrines, all GMPs, including Diamond Valley's, remain subject to them. With no express exemption in either NRS 534.110(7) or NRS 534.037, the only reasonable reading they can bear is that the GMPs they authorize

(O) 1947A

are subject to, not impliedly exempt from, the prior appropriation and beneficial use doctrines that undergird Nevada's water statutes.

## I.

## A.

The closest the majority comes to finding textual support for exempting GMPs from the prior appropriation and beneficial use doctrines is the fourth sentence of NRS 534.110(7), which states:

> If a basin has been designated as a critical management area for at least 10 consecutive years . . . , the State Engineer *shall* order that withdrawals, including, without limitation, withdrawals from domestic wells, be restricted in that basin to conform to priority rights, *unless* a groundwater management plan has been approved for the basin pursuant to NRS 534.037.

*See* Majority op. at 9 (discussing this provision with emphases shown). Ignore technical grammatical rules for the moment and just read the sentence fairly. It is long and clause-filled, to be sure. But a reasonable reader can still understand that the sentence describes circumstances where the State Engineer *must* order curtailment according to priority— where a basin has been designated a critical management area (CMA) for at least 10 consecutive years, and there is no GMP in place. It does not state that the State Engineer can disregard the prior appropriation and beneficial use doctrines in any circumstances, including where a GMP is in place.

The majority reads the clause "unless a [GMP] has been approved" (the unless clause) to modify the clause, "that withdrawals . . . be restricted . . . to conform to priority rights" (the priority-rights clause). That is, the majority says that withdrawals need conform to priority rights in a CMA only if a GMP has not been approved for the basin. This reading disregards conventional rules of grammar and syntax. *See* Scalia & Garner,

*supra*, at 140 (in interpreting a legal text, "[w]ords are to be given the meaning that proper grammar and usage would assign them"). "Unless" is a subordinating conjunction that "introduces a clause that is dependent on the independent clause." *The Chicago Manual of Style* § 5.200 (17th ed. 2017); *see id.* § 5.201(3). And the priority-rights clause is not an independent clause because it has no object. *See id.* § 5.225. The unless clause therefore necessarily refers back to the closest (and only) independent clause in the sentence—"the State Engineer shall order that withdrawals . . . be restricted in that basin to conform to priority rights . . . ." *See id.* at §§ 5.225, 5.228; *see also Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 690 (Tex. 2018) (noting that "properly placed commas" usually signal that a conditional clause applies to the entire series that precedes it). Thus, even closely parsed, the fourth sentence in NRS 534.110(7) says only that the State Engineer must order curtailment when, after a decade has passed, a basin designated as a CMA has no GMP in place. It does not (and grammatically cannot be read to) condition the application of the prior appropriation doctrine—let alone the beneficial use doctrine—on the absence of a GMP.

NRS 534.110(7) was added to NRS Chapter 534 in 2011. *See* 2011 Nev. Stat., ch. 265, § 3, at 1387. Its fourth sentence contains a specific mandate to the State Engineer to order curtailment by priority when an over-appropriated basin has been a CMA for 10 years without a GMP. Because a GMP allows the State Engineer to avoid this specific mandate does not abrogate the prior appropriation doctrine or take it or the beneficial use doctrine out of play. As the district court found, even when the mandate in NRS 534.110(7) to the State Engineer to order curtailment is avoided, conservation measures to enforce the prior appropriation and beneficial use

doctrines remain, including: the State Engineer exercising his or her discretion to order curtailment by priority, *see* NRS 534.110(6) (empowering the State Engineer to order curtailment in all or any part of an over-pumped basin); the creation of a funded land and water rights purchase program, *cf. New Mexico Office of State Eng'r v. Lewis*, 150 P.3d 375, 385 (N.M. Ct. App. 2006) (holding that a strict priority call is not the "first or exclusive response" to a water shortage under a prior appropriation scheme, where "resolution through land and water rights purchases using public funding . . . and perhaps other actions" are provided for); instituting a rotating water-use schedule, *cf.* NRS 533.075; financially incentivizing best farming practices; canceling unused water rights; and curtailing peak season junior pumping.

The majority makes much ado over NRS 534.037(2). In its view, NRS 534.037's silence as to the prior appropriation and beneficial use doctrines signifies that GMPs are impliedly exempt from them. In whole, NRS 534.037(2) reads as follows:

> In determining whether to approve a groundwater management plan submitted pursuant to subsection 1, the State Engineer shall consider, without limitation:
>
> (a) The hydrology of the basin;
>
> (b) The physical characteristics of the basin;
>
> (c) The geographic spacing and location of the withdrawals of groundwater in the basin;
>
> (d) The quality of the water in the basin;
>
> (e) The wells located in the basin, including, without limitation, domestic wells;
>
> (f) Whether a groundwater management plan already exists for the basin; and

SUPREME COURT
OF
NEVADA

(0) 1947A

(g) Any other factor deemed relevant by the State Engineer.

Again, nothing in this statute expressly allows the State Engineer to approve a GMP that restores hydrological balance by usurping senior rights. The use of the phrase "without limitation" to introduce the list of factors in NRS 534.037(2) and the reference to "[a]ny other factor" as the last item in the list makes the list non-exhaustive. The statute's silence as to the prior appropriation and beneficial use doctrines thus does not support reading it to say that neither doctrine applies. *Cf.* Scalia & Garner, *supra*, at 132-33 (noting that the negative-implication canon does not apply to expressly non-exhaustive lists). The opposite is true: These doctrines apply to GMPs because the statute does not expressly state they do not.

NRS 534.037(2) directs the State Engineer to consider certain technical environmental factors in evaluating a GMP (as well as other relevant factors "without limitation"). The prior appropriation and beneficial use doctrines—bedrock principles founding the entirety of Nevada water law, *see Mineral County*, 136 Nev. at 513, 473 P.3d at 426— do not fit in the category of enumerated environmental considerations that NRS 534.037(2) lists. Nor would a reasonable reader expect them to be listed. Thus, the enumeration of factors the State Engineer may consider in approving a GMP does not excuse the State Engineer from adhering to the prior appropriation and beneficial use doctrines in addressing over-pumped basin shortages. In short, NRS 534.110(7) and NRS 534.037 neither expressly nor impliedly authorize the State Engineer to abdicate responsibility for enforcing the prior appropriation and beneficial use doctrines by approving a GMP that violates these doctrines.

(O) 1947A

B.

The majority compounds its error by looking at NRS 534.037 and the fourth sentence in NRS 534.110(7) and deciding their meaning without considering their text in the larger context of NRS 534.110 and NRS Chapters 533 and 534 as a whole. But "[c]ontext is a primary determinant of meaning." Scalia & Garner, *supra*, at 167. "[T]he meaning of a statute is to be looked for, not in any single section, but in all the parts together and in their relation to the end in view." *Panama Ref. Co. v. Ryan*, 293 U.S. 388, 439 (1935) (Cardozo, J., dissenting).

NRS 534.110(7) was added to NRS 534.110 in 2011, along with NRS 534.037. *See* 2011 Nev. Stat., ch. 265, §§ 1, 3, at 1383-87. They introduce the concept of critical management areas to NRS Chapter 534, with NRS 534.110(7) spelling out when the State Engineer may, and when he or she must, designate a basin as a CMA. As discussed in part I.A., *supra*, NRS 534.110(7) further specifies when, in a CMA-designated basin, the State Engineer *must* order curtailment by priority. The preceding subsection, NRS 534.110(6), predates the 2011 amendments. It grants the State Engineer the general power to curtail pumping by priority:

> Except as otherwise provided in subsection 7, the State Engineer shall conduct investigations in any basin or portion thereof *where it appears that the average annual replenishment to the groundwater supply may not be adequate for the needs of all permittees and all vested-right claimants*, and if the findings of the State Engineer so indicate, except as otherwise provided in subsection 9, *the State Engineer may order that withdrawals, including, without limitation, withdrawals from domestic wells, be restricted to conform to priority rights.*

(emphases added); *see also* NRS 534.110(9) (recognizing the State Engineer's authority to order curtailment by priority "pursuant to subsection 6 or 7").

Subsections 6 and 7 of NRS 534.110 identically describe the State Engineer's curtailment power (to "order that withdrawals, including, without limitation, withdrawals from domestic wells, *be restricted to conform to priority rights*"). Subsection 6 explains when the State Engineer *may* invoke that power (after investigating and finding over-appropriation and over-pumping). Subsection 7 differs only in that it describes circumstances where that permissive authority becomes a mandate (following 10 consecutive years of CMA designation with no GMP in place). *See State v. Am. Bankers Ins. Co.*, 106 Nev. 880, 882, 802 P.2d 1276, 1278 (1990) (noting rule that mandatory words impose a duty while permissive words grant discretion). There is no logical reason to read identical language describing the State Engineer's curtailment authority to achieve contradictory results (i.e., subsection 6 embracing and subsection 7 rejecting curtailment by priority when a CMA has a GMP).[1]

Allowing the State Engineer to approve a GMP that deviates from the prior appropriation and beneficial use doctrines puts NRS 534.037 and NRS 534.110(7) into direct conflict with the rest of NRS Chapters 533 and 534. As a majority of this court discussed at length just two years ago, prior appropriation and beneficial use are Nevada's water statutes' two most fundamental principles—so fundamental that even the public trust doctrine is subordinate to them. *Mineral County*, 136 Nev. at 518-19, 473

---

[1]The "[e]xcept as otherwise provided in subsection 7" language logically refers to NRS 534.110(7)'s mandate to the State Engineer to order curtailment, not the GMP exception to that mandate.

P.3d at 430; *but see id.* at 520. 529, 473 P.3d at 431, 437 (Pickering, J., dissenting in part). Priority and beneficial use matter most when shortages arise. Yet, under the majority's reading of NRS 534.037 and NRS 534.110(7), all junior water right holders otherwise facing curtailment need do is gather up a majority to petition the State Engineer to designate the basin a CMA and, again by simple majority vote, adopt a GMP that reallocates senior water rights to junior water right holders, without compensating the senior holders for the loss of their valuable rights. This is contrary to the protection Nevada's water statutes afford settled water rights, on which Nevada's "[m]unicipal, social, and economic institutions rely" and on which the "prosperity of the state" depends. *Mineral County*, 136 Nev. at 518, 473 P.3d at 429.

"A textually permissible interpretation that furthers rather than obstructs [a law's] purpose should be favored." Scalia & Garner, *supra*, at 63. And the majority's application of NRS 534.110(7) and NRS 534.037 disincentivizes conservation in over-appropriated basins. Order 1302 impairs senior water right holders' valuable property rights without compensation or process based on the majority vote of all water rights holders, including junior water right holders, who have the most to gain. *See* State Eng'r, Ruling No. 6290 21-22 (Aug. 15, 2014) (finding that many rights holders in the Diamond Valley Basin discouraged the State Engineer from taking conservation action at that time). If, however, 534.110(7) is read as the backstop that its text and context support, then cooperation in conservation efforts is in the junior water right holders' interests to avoid mandated curtailment.

Some senior water right holders will cooperate altruistically, in the interests of their community. More than likely, some will not. These

folks should be encouraged to do so via *compensation*, not have their valuable water rights taken from them on the vote of a simple majority. That is the prior appropriation doctrine in action—defending the rights of senior water right holders during water shortages. What purpose does it serve to define and protect senior rights if juniors in a dwindling basin can simply vote to reallocate them when the rubber hits the road? *See* NRS 533.430(1);[2] NRS 533.265(2)(b); NRS 533.090(1)-(2);[3] NRS 534.020(1);[4] *cf. In re Parental Rights as to S.M.M.D.*, 128 Nev. 14, 24, 272 P.3d 126, 132 (2012) (noting that this court avoids interpretations that render statutory text meaningless).

Beyond all this, before the law takes property from persons, the government is constitutionally required to provide "just compensation" and process. *Murr v. Wisconsin*, ___ U.S. ___, ___, 137 S. Ct. 1933, 1942 (2017) (quoting U.S. Const. amend. V); *see also* Nev. Const. art. 1, § 8(3) ("Private property shall not be taken for public use without just compensation having been *first* made . . . ." (emphasis added)). This implicates Chief Justice Parraguirre's point regarding the canon of constitutional avoidance—surely an interpretation that does not raise such "serious constitutional doubts"

---

[2]"Every permit to appropriate water, and every certificate of appropriation granted under any permit by the State Engineer . . . shall be, and the same is hereby declared to be, subject to existing rights . . . ." NRS 533.430(1).

[3]NRS 533.090 allows the State Engineer to determine priority of relative rights. NRS 533.265 requires that certificates of final determination of relative rights include their date of priority.

[4]"All underground waters within the boundaries of the State belong to the public, and, subject to all existing rights to the use thereof, are subject to appropriation for beneficial use only under the laws of this State relating to the appropriation and use of water and not otherwise." NRS 534.020(1).

SUPREME COURT
OF
NEVADA

10

should be favored. *See* Dissenting op. at 6 (quoting *Degraw v. Eighth Judicial Dist. Court*, 134 Nev. 330, 333, 419 P.3d 136, 139 (2018)). But even further, the constitutional context militates against the majority's holding that, in enacting NRS 534.110(7) and NRS 534.037, the Legislature has, by implication and not express direction, abrogated the prior appropriation and beneficial use doctrines. This is the very area in which these doctrines are paramount—an over-appropriated and consistently over-pumped basin. Surely the Legislature would have anticipated the need for funding and processes to protect senior water right holders if it meant to exempt GMPs in CMAs from the prior appropriation and beneficial use doctrines. Other states do not allow deviation from prior appropriation without protecting senior water right holders. *See, e.g., Empire Lodge Homeowners' Ass'n v. Moyer*, 39 P.3d 1139, 1150-51 (Colo. 2001) (holding that water statute authorizes out-of-priority diversions of water via augmentation plans so long as senior rights are protected via replacement water that offsets the out-of-priority diversion); *Lewis*, 150 P.3d at 387-88 (offering relief to junior rights holders at the express authorization of the legislature while still honoring prior appropriation via provided funds); *Arave v. Pineview W. Water Co.*, 477 P.3d 1239, 1245 (Utah 2020) (noting that a junior appropriator has the right—at their own expense—to replace a senior appropriator's water). Why would Nevada?

### C.

Even the State Engineer did not think that the current statutory scheme permitted curtailment unconstrained by prior appropriation. Five years after the statutes at issue were enacted, the State Engineer proposed legislative amendments that would have filled the silence in NRS 534.037 that the majority relies on and allowed a GMP to deviate from prior appropriation. *See* S.B. 73, 79th Leg. § 2 (Nev. 2016); *see*

SUPREME COURT
OF
NEVADA

(O) 1947A

*also Bailey v. Nev. State Eng'r*, Nos. CV-1902-348, CV-1902-349 & CV-1902-350, at 26 (Nev. Dist. Ct. Apr. 23, 2020) (Order Granting Petition for Judicial Review). The bill would have allowed the State Engineer to approve a GMP "limiting the quantity of water that may be withdrawn under any permit or certificate or from a domestic well *on a basis other than priority*." S.B. 73 §2(3). The State Engineer's former understanding of the scope of the office's powers is instructive, *Nev. Attorney for Injured Workers v. Nev. Self-Insurers Ass'n*, 126 Nev. 74, 83, 225 P.3d 1265, 1271 (2010) (noting that the court may consider agency interpretations of statutes they enforce where consistent with the text): As written, NRS 534.110(7) and NRS 534.037 do not authorize a GMP that violates prior appropriation or beneficial use principles.

In sum, text, context, and the enforcing agency's original interpretation all militate against the reading the majority gives NRS 534.110(7) and NRS 534.037. For these reasons, and the additional reasons stated in Chief Justice Parraguirre's dissent, which I join except as to its finding of ambiguity, I respectfully dissent.

_____*Pickering*_____, J.
Pickering

I concur:

_____*Silver*_____, J.
Silver

Supreme Court
of
Nevada

(O) 1947A